Bobby WASHINGTON, Petitioner,

v.

David HARRIS, as Superintendent of Green Haven Correctional Facility, Respondent.

No. 79 Civ. 3911 (JMC).

United States District Court,
S. D. New York.

Jan. 29, 1980.

Jane E. Berger, New York City, for petitioner.

Mario Merola, Bronx Dist. Atty., New York City (by Billie Manning and Allen H. Saperstein, Asst. Dist. Attys., New York City), for respondent.

CANNELLA, District Judge:

The petition of Bobby Washington, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, is denied.

Petitioner is currently confined at the Green Haven Correctional Facility, Stormville, New York, pursuant to the judgment of the New York Supreme Court, Bronx County (Tierney, J.), rendered November 19, 1975, convicting him, upon a jury verdict, of Murder in the Second Degree, N.Y. Penal Law § 125.25(1) (McKinney 1975) and Criminal Possession of a Weapon in the Third and Fourth Degrees, N.Y. Penal Law §§ 265.01 and 265.02 (McKinney Supp.1979). Petitioner was sentenced to concurrent terms of fifteen years to life and zero to seven years for these convictions. Petitioner's motion to vacate the judgment pursuant to section 440.10 of the New York Criminal Procedure Law was denied by the trial judge. Petitioner subsequently appealed the judgment of conviction to the Appellate Division, which affirmed the conviction without opinion on April 12, 1977. Leave to appeal to the New York Court of Appeals was denied. Petitioner's pro se petition for a writ of certiorari to the United States Supreme Court was also denied.

In seeking this writ, the petitioner makes the following constitutional claims: (1) the trial court's erroneous jury instruction concerning the defense of justification violated his right to due process of law; (2) certain statements by the prosecutor during his summation violated his right to counsel since the statements encouraged jurors to

draw an adverse inference from the fact that petitioner exercised his right to counsel immediately after his arrest and before he gave a statement to the police; (3) petitioner was denied the effective assistance of counsel in violation of his sixth amendment right, and (4) section 35.15(2) of the New York Penal Law, which outlines the circumstances under which deadly physical force can be used against another, violates the petitioner's right to due process and equal protection since it irrationally imposes a duty to retreat on the victim of an assault or attempted murder, but not on the victim of a kidnapping, forcible rape, forcible sodomy, robbery or burglary.

## FACTS

At trial, the prosecution presented the testimony of several witnesses and a written statement made by the petitioner several hours after his arrest while represented by counsel, which established the following facts: On June 4, 1973, at approximately 8:15 a. m., the petitioner and his wife were in front of their apartment at 1043 Clay Avenue in the Bronx. The deceased, Peggy Mickens, accompanied by a woman friend, approached and attacked Mrs. Washington with a knife as she was placing trash in the garbage can. Mickens had harassed and assaulted the petitioner and his family for two years prior to this incident, and both Mickens and petitioner had filed criminal complaints against each other in the past.[1] When petitioner, who was in his car, saw the attack, he took a pistol from the glove compartment, and intervened in the struggle. Petitioner fired his gun, but did not know whether he hit Mickens. Mickens then came after him with the knife. Petitioner wrestled with Mickens until he succeeded in getting the knife away from her. When petitioner was asked if he stabbed Mrs. Mickens with the knife, he answered "I guess so. I was just afraid." Transcript of proceedings at 202, *People v. Wash-*

*ington,* No. 1999–73 (Sup.Ct., Bronx Co. October 1, 1975) [hereinafter cited as "Tr."].

The medical examiner who performed an autopsy of the deceased testified that she had a bullet wound in the right eye, which had destroyed the eyeball; slash wounds on the face; a deep slash wound on the throat, which had severed the main artery; another deep stab wound into the abdominal cavity, as well as "defensive wounds" on the hands, wrists and knee. Tr. at 132–33. Defensive wounds are recognizable as the result of an assault victim's attempt to ward off blows or grab the attacker's weapon. Tr. at 134. The medical examiner identified the cause of death as multiple stab wounds and the bullet wound to the eye, although he also testified that the bullet wound alone would not have caused the deceased to lose consciousness. Neither the petitioner nor his wife were injured during the struggle.

Alejo Martinez and George Del Valle testified that they saw petitioner grabbing a woman by the arm and stabbing her several times in the neck and face. Tr. at 87, 147. Del Valle testified that when the woman fell to the curb, the man leaned over and stabbed her in the throat. Tr. at 150. The defense attacked the credibility of these witnesses.

At trial, the petitioner was represented by retained counsel,[2] and did not testify or call any witnesses on his behalf. The defense argued that the petitioner's post-arrest statement, which was introduced into evidence during the prosecution's direct case, was the only evidence offered concerning the defense of justification, and was "absolute proof of his innocence." Tr. at 296.

## DISCUSSION

### 1. *The Jury Instructions*

The petitioner argues that the trial court erroneously instructed the jury regarding

---

[1]. In 1968, the petitioner and Mrs. Mickens had an affair which the petitioner broke off. Thereafter, Mrs. Mickens began to harass the petitioner and his family.

[2]. The petitioner's wife was also charged with Mrs. Mickens' murder and was represented by petitioner's trial counsel. She was tried separately and acquitted.

the duty to retreat contained in section 35.15(2) of the New York Penal Law. Petitioner did not object to this instruction at trial. The petitioner relies on the constitutional principle that an accused must not be convicted "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *see Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). Specifically, petitioner contends that the jury instructions did not state a necessary element of the duty to retreat and thus the jury applied an improper standard.

Section 35.15(2), in pertinent part, provides:

> A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:
>
> (a) He reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating  .  .  . .

*Id.* § 35.15(2).[3] The trial court read this statutory definition to the jury, but several times neglected to include the element of the petitioner's knowledge[4] that he could retreat in complete safety in his illustrations for the jury.[5] Petitioner argues that

3. Section 35.15 provides:

1. A person may, subject to the provisions of subdivision two, use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person, unless:

(a) The latter's conduct was provoked by the actor himself with intent to cause physical injury to another person; or

(b) The actor was the initial aggressor; except that in such case his use of physical force is nevertheless justifiable if he has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened imminent use of unlawful physical force; or

(c) The physical force involved is the product of a combat by agreement not specifically authorized by law.

2. A person may not use deadly physical force upon another person under circumstances specified in subdivision one unless:

(a) He reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use·deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating; except that he is under no duty to retreat if he is:

(i) in his dwelling and not the initial aggressor; or

(ii) a peace officer or a person assisting a peace officer at the latter's direction, acting pursuant to section 35.30; or

(b) He reasonably believes that such other person is committing or attempting to commit a kidnapping, forcible rape, forcible sodomy or robbery; or

(c) He reasonably believes that such other person is committing or attempting to commit a burglary, and the circumstances are such that the use of deadly physical force is authorized by subdivision three of section 35.20.

N.Y. Penal Law § 35.15 (McKinney 1975).

4. The New York Penal Law provides:

A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.

N.Y. Penal Law § 15.05(2) (McKinney 1975).

5. The entire jury instructions regarding the defense of justification are set out below:

When a defense of justification is raised at a trial as it has been in this case the People have the burden of disproving such defense by evidence beyond a reasonable doubt.

The law sets forth the circumstances and conditions under which the use of physical .force is justified in defense of a person; insofar as it pertains to this case the law states a person may use physical force upon another person when and to the extent he reasonably believes such to be necessary to .defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person.

However, the law also says that a person may not use deadly physical force upon another person unless (A) he reasonably believes that such other person is using or is about to use deadly physical force[.]

Even in such a case, however, the actor may not use deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating.

this was error since the jury applied an objective standard to determine whether the petitioner could have retreated in complete safety, rather than determining his subjective awareness of the situation. Petitioner also maintains that this error was highly prejudicial since his post-arrest statement proves that his state of mind during the attack was such that he was incapable of making the assessment that he could safely retreat. Thus, he contends that the prosecution did not meet its burden of disproving each element of the defense beyond a reasonable doubt.

■ It is axiomatic that a state prisoner who petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 must first exhaust his state remedies. *Wilson v. Fogg,* 571 F.2d 91, 92 (2d Cir. 1978). In order to fulfill this requirement, the petitioner must provide the state courts with a "fair opportunity" to consider the same constitutional claim that he advances in federal court. *Picard v. Connor,* 404 U.S. 270, 276,

Deadly physical force is defined as follows: Physical force which under the circumstances in which it is used is readily capable of causing death or other serious physical injury.

The word "unlawful" means without legal right or justification.

The word "imminent" means a present danger that must be instantaneously met and guarded against[.]

"Retreat" means to retire or to withdraw from what is a dangerous situation. A person is justified in using physical force in self defense if he reasonably believes that an assailant is using unlawful physical force against him or another regardless of whether such is the fact and he may use a degree of force which he reasonably believes to be necessary to repel the attack, regardless of whether such degree actually is necessary.

Deadly physical force is only permitted to be employed by a person who reasonably believes that his assailant is using or is about to use unlawful deadly force against him or another person. Even though reasonably believing that deadly force is about to be used against him or another a person may not counter with the same if he knows that he can avoid the necessity of doing so by retreating.

If you find that the deceased Peggy Mickens and the defendant had gotten into an altercation or a dispute than it would be a question of fact for you to determine (1) whether under all the circumstances there were reasonable grounds for the defendant to believe that he or another was in imminent danger of unlawful deadly physical force being used against Him [sic] or another person by the deceased Peggy Mickens.

And (2) even if you find that it was reasonable for the defendant to believe that he or another person was in imminent danger of unlawful deadly force being used against him or another person, whether he could have avoided the use of deadly physical force on his part with complete safety by retreating.

If you find as a fact that the defendant did have reasonable grounds for believing that he or another person was in imminent danger of being attacked with unlawful deadly physical force by the deceased Peggy Mickens and he acted reasonably in such believe, [sic] and he could not avoid the necessity of using deadly physical force himself by retreating and he acted reasonably in doing what he did then you should acquit the defendant.

It is immaterial whether you find that the defendant's belief was incorrect; that he or another person was in imminent danger of deadly physical force being inflicted upon him or another person.

If you find as a fact that there were reasonable grounds for the defendant to believe that he or another person was in imminent danger of deadly physical force being inflicted upon him or another person and that he could not avoid the necessity of using deadly physical force with complete safety by retreating, then you may find that he was justified in defending himself or another person against that apprehended danger.

On the other hand, if you find that although the deceased, Peggy Mickens and the defendant had gotten into an altercation, and there were no reasonable grounds for the defendant to believe that he or another person was in imminent danger of unlawful deadly force being inflicted upon him by the deceased Peggy Mickens or that he could have avoided the necessity of using deadly force with complete safety by retreating, then on either of said circumstances, he would not be justified in resorting to the use of deadly physical force to repeal [sic] an attack upon him or another by the deceased Peggy Mickens.

In considering this question of justification, you will take into account all of the testimony in this case, including the testimony of the medical examiner. The burden of establishing by evidence beyond a reasonable doubt that the defendant unlawfully caused the death of Peggy Mickens rests at all times upon the People, the prosecution, and the People have the additional burden of disproving the defense of justification by evidence beyond a reasonable doubt.

Tr. at 369–73. The trial court gave the same instruction when the jury requested instructions on the defense during their deliberations. Tr. 405–11.

92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *United States ex rel. Nelson v. Zelker*, 465 F.2d 1121, 1124 (2d Cir.), *cert. denied*, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972). It is insufficient to focus the attention of the state court on an issue which is discussed in terms of general due process violations or errors in state law. *See Wilson v. Fogg, supra*, 571 F.2d at 94; *United States ex rel. Nelson v. Zelker, supra*, 465 F.2d at 1124.

■ The petitioner has not exhausted his state remedies according to this standard. The Court has examined the briefs in the Appellate Division. The petitioner argued that several aspects of the trial court's jury instructions were erroneous and deprived him of a fair trial and due process of law. His total argument in that court regarding the jury instruction on the duty to retreat consisted of four sentences in which he pointed out that the trial court had neglected to define "knowledge" and had misstated the law so that the jury applied an objective rather than a subjective standard when it determined the petitioner's duty to retreat. Appellant's Brief at 31, *People v. Washington*, No. 1999–73 (App.Div., 1st Dep't). The petitioner did not argue that since an element of the defense was omitted, the prosecution had failed to disprove each element of it beyond a reasonable doubt. Furthermore, he did not argue that this error was highly prejudicial on the ground that his post-arrest statement allegedly showed that he was incapable of being aware that he could have retreated in complete safety. This is not a case where the appellate and habeas counsel merely phrased the matter in different terms. *See Callahan v. LeFevre*, 605 F.2d 70, 74 (2d Cir. 1979). The "'ultimate question for disposition,'" *Johnson v. Metz*, 609 F.2d 1052, 1054 (2d Cir. 1979), whether the prosecution failed to disprove an element of the defense beyond a reasonable doubt, was never adequately presented to the state court. Furthermore, the state's Appellate Division brief did not respond to such a constitutional attack. Since petitioner has not exhausted his state remedies on this issue, the Court's denial of the writ on this ground is without prejudice to the petitioner's right to renew his petition should relief be denied in the New York state courts.

### 2. *Prosecutor's Statements during Summation.*

The petitioner also attacks the following comment by the prosecutor in summation which questions the credibility of the petitioner's post-arrest statement:

Let's examine Bobby Washington's statement for a second: What time was the crime committed? Police Officer [sic] testified that he got the call at approximately 8:30.

We suggest that the crime happened before that. What time was the statement taken? 1:45 p. m. Man had time to think about what happened. [sic]

Here's a man who had time and did, in fact, consult with an attorney.

Here's a man that sat there, who stood around wherever he was kept for a while, thinking about what happened and what happened before.

Did he have time to supply or think of elements to support a story? He knew that he wasn't hurt; he knew that his wife wasn't hurt.

Tr. at 328.[6] Petitioner's trial counsel objected to the comment on the grounds that the prosecutor could not controvert a statement he had offered in evidence in his direct case. Petitioner argues that the comment was improper since it penalized him for exercising his sixth amendment right to consult with an attorney by encouraging the jury to draw a negative inference

---

**6.** Petitioner contends that the prejudicial impact of the prosecutor's comments was compounded by the statement of Officer Texeira that the petitioner's attorney directed the police

not to question the petitioner. Tr. at 226, 229–30. Petitioner argues that the prosecution attempted to create the impression that his attor-

from the fact that he spoke with his attorney before giving a statement to the police.[7]

■ The prosecutor's remark was clearly improper. Just as the prosecution may not attempt to impeach a defendant by commenting upon the exercise of his fifth amendment right to remain silent, *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), a defendant may not be impeached simply because he waited to speak to his attorney before giving a statement,[8] especially since his desire to consult counsel may have been induced by the *Miranda* warnings given by the police. That fact is of dubious probative value when considering the truthfulness or reliability of the post-arrest statement in this case, *see Doyle v. Ohio, supra*, 426 U.S. at 617–18, 96 S.Ct. 2240, and thus serves little purpose other than to encourage the jury to draw an impermissible inference that the statement was false simply because the petitioner spoke to an attorney before making it.

Petitioner further contends that this error was highly prejudicial since he did not testify at the trial, and relied on his post-arrest statement to establish his defense of justification. Since none of the witnesses at trial saw who initiated the attack, the petitioner argues that the statement is crucial since it alone raised the issue of self-defense. Petitioner stated that the deceased first attacked his wife and then him. The statement was also inculpatory since he admitted his responsibility for causing her death.

The Court has carefully considered the petitioner's arguments, as well as the totality of evidence produced at trial. Under the circumstances, the error contained in the comment was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The comment in this case, as in *Haberstroh v. Montanye*, 493 F.2d 483 (2d Cir. 1974), "was brief and superficial and was addressed to credibility rather than substance. It is highly unlikely that the comment swayed the jury." *Id.* at 485. Given the evidence produced at trial, especially the testimony of the medical examiner, it is highly unlikely that the petitioner could have succeeded with the defense of justification even if the jury totally believed his post-arrest statement. Whether the duty to retreat is measured by an objective or subjective standard, the extent of the wounds suffered by the deceased is the most convincing evidence that the petitioner in fact was aware at some point that he could retreat from her attack in complete safety.[9] Under these circumstances, the error in the prosecutor's summation does not entitle the petitioner to habeas relief.

### 3. *Petitioner's Claim of Ineffective Assistance of Counsel.*

The petitioner next contends that his retained trial counsel's failure to investigate and present evidence relevant to his defense of justification deprived him of his sixth amendment right to effective assistance of

ney was trying to fabricate an explanation for the killing.

7. After an examination of the Appellate Division briefs, the Court concludes that petitioner has exhausted his state remedies on this issue. He relied on both state and federal constitutional authority in objecting to the prosecutor's comments, and thus fairly presented the substance of his sixth amendment claim, although the State's responding brief mistakenly interpreted his objection to be an attack on the statement as an improper comment on petitioner's failure to testify. In this Court, however, the State apparently concedes that petitioner exhausted his state remedies on this sixth amendment claim.

8. The Court notes that the prosecutor's comment was also an improper attack upon the petitioner's fifth amendment right to remain silent, although this issue has not been raised by him here or in the state courts.

9. Any doubt that the prosecution met its burden of disproving the defense of justification is dispelled by the testimony of Del Valle and Martinez. While their accounts of the incident differed in some particulars and their credibility was attacked, both testified that petitioner continued his attack after the deceased had fallen. Tr. at 87, 148–50. Furthermore, the medical examiner's testimony corroborated the most inculpatory details of their testimony.

counsel. Specifically, the petitioner argues that his attorney was aware of witnesses who could testify to past attacks and threats by the deceased against the petitioner and his family. He maintains that such evidence was relevant to the justification defense in that it was relevant to his state of mind at the time of the deceased's last attack.

The Court has examined petitioner's motion for a new trial pursuant to N.Y.C.P.L. § 440.10 and the Appellate Division briefs. Although the State has not raised the issue of exhaustion of state remedies, the question is a close one. However, the Court concludes that the state courts had a fair opportunity to review petitioner's sixth amendment claims. *See Twitty v. Smith,* 614 F.2d 325 at 331–332 (2d Cir. 1979).

■ The legal standard to be applied by this Court in determining whether petitioner's right to effective assistance of counsel has been violated is quite demanding:

> [U]nless the purported representation by counsel was such as to make the trial a farce and a mockery of justice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds for the issuance of a writ of habeas corpus . . . .

A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice.

*Id.* at 333 (quoting *United States v. Wight,* 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied,*

338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950)). The Court has reviewed the entire trial transcript with this standard in mind, and concludes that petitioner received effective assistance of counsel.[10] In retrospect, the petitioner believes the outcome of his trial would have been different if evidence of his past disputes with the deceased would have been presented to the jury. In view of the totality of evidence produced at trial, it is highly unlikely that such information would have affected the jury's conclusion regarding the justification defense. While evidence of past disputes is highly relevant to the issue of state of mind when considering whether the individual reasonably believes another is about to use deadly physical force, such evidence has little bearing on the duty to retreat, which is in issue here.

The petitioner has urged this Court to adopt a less stringent standard when considering his claims of ineffective assistance of counsel. *See Cooper v. Fitzharris,* 586 F.2d 1325, 1327 (9th Cir. 1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979) ("reasonably competent and effective" standard). The Court declines to do so since the assistance afforded the petitioner by his attorney satisfied even the more liberal and lenient standards which have been adopted by nine circuits, and which Judge Mansfield has urged the Second Circuit Court of Appeals to consider. *See Indiviglio v. United States,* 612 F.2d 624, 632 (2d Cir. 1979) (Mansfield, J., concurring); *Twitty v. Smith, supra,* 614 F.2d at 331. In view of the above, habeas corpus relief is not available to the petitioner on this ground.

---

10. In responding to the petitioner's motion for a new trial, the trial judge observed:

> In the case at bar, the defendant's private counsel was observed by this court throughout the trial and in addition this court had for several years prior to this case observed that same counsel in other matters. On all occasions, including the trial of this defendant, counsel consistently comported himself at superior levels of competence, scholarship and advocacy which necessarily substantiates this Court's conclusion that he is eminently qualified particularly in the field of criminal law.

> Whether or not in retrospect it was imprudent to advise the defendant not to testify is not the question here. Penetrating hindsight is not the test. Rather, it is whether counsel provided the best available defense and whether the defendant received a fair trial. The record irrefutably shows this defendant not only received a fair trial but also was provided a vigorous defense, undoubtedly the best available in view of the evidence and testimony adduced at trial.

Memorandum and Order at 8, *People v. Washington,* No. 1999–732 (Sup.Ct., Bronx Co. October 14, 1976).

4. *The Constitutionality of Section 35.15(2) of the New York Penal Law.*

The petitioner contends that section 35.15(2) establishes an irrational classification which violates his rights to due process and equal protection. He argues that subsection (2)(a) imposes a duty to retreat upon victims of assault or attempted murder, whereas the other subdivisions impose no such duty upon a victim in his dwelling who is not the initial aggressor, *see* N.Y. Penal Law § 35.15(2)(a)(i), a victim of a kidnapping, forcible rape, forcible sodomy or robbery, *see id.* § 35.15(2)(b), or a victim of a burglary by reference to section 35.20, *see id.* § 35.15(2)(c).

In advancing this construction of the duty to retreat contained in section 35.15(2), the petitioner apparently relies [11] upon New York cases interpreting section 1055 of the former Penal Law.[12] Under the prior New York law, a person could use deadly physical force to resist the commission of any felony upon the person, and was under no duty to retreat. *People v. Ligouri*, 284 N.Y. 309, 31 N.E.2d 37 (1940). Thus, the victim of a felony could stand his ground and, if necessary, use deadly physical force to repel the person making the felonious attack. *People v. Asan*, 22 N.Y.2d 526, 293 N.Y.S.2d 326, 239 N.E.2d 913 (1968); *People v. Clay*, 29 A.D.2d 891, 289 N.Y.S.2d 11 (2d Dep't 1968); *Practice Commentaries*, N.Y. Penal Law § 35.15 (McKinney 1975). Petitioner argues that section 35.15(2) retains the above no retreat rule for victims of burglary and the four felonies enumerated in subdivision (b). Accordingly, he contends that section 35.15(2) imposes a duty to retreat arbitrarily upon assault and murder victims.

The respondent, who apparently shares the petitioner's interpretation of this limited continuation of the no retreat rule, argues that it is reasonable to place a duty to retreat upon victims of assault, but not upon victims of the enumerated felonies. The respondent relies upon the proposition that there is often a relationship between the victim and perpetrator which provokes the assault. Therefore, the victim is not completely helpless or blameless with respect to the attack, and thus should have to retreat if he knows he can do so in complete safety to himself and others. Respondent's Memorandum in Opposition at 19 (filed October 24, 1979). This argument is unpersuasive, and respondent cites no cases to support it. Even were the Court to accept the proposition that assaults, unlike the enumerated felonies, often involve a pro-

---

**11.** Neither the petitioner nor the respondent cited any New York authority for the positions advanced by them in this Court on this issue.

**12.** Section 1055 provided:

Justifiable homicide. Homicide is justifiable when committed by a public officer, or person acting by his command and in his aid and assistance:

1. In obedience to the judgment of a competent court; or,

2. Necessarily, in overcoming actual resistance to the execution of the legal process, mandate or order of a court or officer, or in the discharge of a legal duty; or,

3. Necessarily, in retaking a prisoner who has committed, or has been arrested for, or convicted of a felony, and who has escaped or has been rescued, or in arresting a person who has committed a felony and is fleeing from justice; or in attempting by lawful ways and means to apprehend a person for a felony actually committed, <u>or in attempting by lawful ways and means to apprehend a person for a crime actually committed, when the circumstances are such that one would have reasonable cause for believing the com-</u>mitted crime was a felony, or in lawfully suppressing a riot, or in lawfully preserving the peace.

Homicide is also justifiable when committed:

1. In the lawful defense of the slayer, or of his or her husband, wife, parent, child, brother, sister, master or servant, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony, or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished; or,

2. In the actual resistance of an attempt to commit a felony upon the slayer, in his presence, or upon or in a dwelling or other place of abode in which he is.

1958 N.Y. Laws c. 706 § 2 (repealed 1965). The version of Section 1055 contained in the Penal Laws of 1909 is the same as above with the exception of the underscored portion which was added by the 1958 amendment. *See* N.Y. Penal Law § 1055 (Consol. 1909) (repealed 1965).

vocative relationship between the victim and perpetrator, the statute would be over-broad since numerous assault victims have no prior relationship with their attackers.

■ It is unnecessary, however, to justify the distinction created by petitioner's construction of the duty to retreat, since the Court does not believe that petitioner's construction is an accurate statement of New York law. Before entertaining a constitutional challenge to a statute, a court must first ascertain whether a construction of the statute which avoids the constitutional question is fairly possible. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). In the present case, neither the petitioner nor the respondent has referred to any New York case law which supports the petitioner's construction. The Court's own research has failed to disclose any New York cases holding that the victims of the felonies enumerated in subdivision (2)(b) have no duty to retreat. Rather, after a careful reading of the statute with the goals of the revision in mind, the Court concludes that a fair construction would impose a duty to retreat even upon these victims, if they can retreat with complete safety to themselves and others. *See People v. Dingley*, 50 A.D.2d 361, 378 N.Y. S.2d 90 (3d Dep't 1976), *rev'd on other grounds*, 42 N.Y.2d 888, 397 N.Y.S.2d 789, 366 N.E.2d 877 (1977).

Section 35.15 was enacted to effectuate several important changes and clarifications in the law of self-defense. *See Practice Commentaries*, N.Y. Penal Law § 35.15, *supra.* The change most pertinent to the problem at hand is the intent of the drafters to limit the circumstances under which an individual can lawfully resist the commission of a felony through the use of deadly physical force. *See id.* This limitation was accomplished by providing that an individual may use deadly physical force in resistance only in instances of five severe

felonies. The statute further limits the permissible use of deadly physical force to that which a person reasonably believes necessary to protect himself or a third person. *See* N.Y. Penal Law § 35.15(1) (McKinney 1975).

It can hardly be said that the New York Legislature intended to relieve a victim of the enumerated felonies of the duty to retreat merely because the statute gave him the right to use deadly physical force to protect himself or a third person when that was reasonably believed to be necessary. If an individual knew he could retreat in complete safety to himself and others, he would not reasonably believe that deadly physical force was necessary to defend himself or the third person. The *Practice Commentaries* to section 35.15 support this interpretation:

> The revised section (subd. 2) codifies what was for many years the former law: in substance, that, even though reasonably believing deadly physical force is about to be used against him, a person may not counter with the same if he knows that he can avoid the necessity of doing so by retreating, unless he is in his dwelling and not the initial aggressor or a peace officer making an authorized arrest

. . . . .

*Id.* at 93 (citations omitted).

■ In sum, the Court finds that the only exceptions to the duty to retreat are the ones set out in subdivisions (2)(a)(i) and (2)(a)(ii). As to those, the Court finds that there is a rational basis to relieve an individual of the duty to retreat when he is in his dwelling and not the initial aggressor,[13] or he is a peace officer or person assisting a peace officer.

A brief consideration of the practical implications of petitioner's construction of section 35.15(2) clearly illustrates its incompatibility with the goal of the revision to restrict the unnecessary use of deadly physical force. Under the petitioner's construc-

---

**13.** It is not now and never has been the law that a man assailed in his own dwelling is bound to retreat. If assailed there, he may stand his ground and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home. *People v. Tomlins*, 213 N.Y. 240, 243 (1914) (Cardozo, J.).

tion, an individual who is threatened by a person with a knife would have to retreat if he knew he could do so in complete safety to himself and others. If, however, the same knife-wielding assailant threatened to rape, rob, sodomize or kidnap the victim or an individual he was attempting to protect, under the petitioner's construction, the victim would be relieved of the duty to retreat even if he knew he could do so in complete safety to himself and the third person, and thus avoid the necessity of using deadly physical force. The Court finds that this is not the result intended by the New York Legislature. Since the statute does not create the arbitrary classification asserted by the petitioner, the Court finds that his constitutional attack upon section 35.15(2) is baseless.

### CONCLUSION

For the above reasons, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

SO ORDERED.