OPINION OF THE COURT
Phoebe K. Greenbaum, J.
The question presented by this juvenile delinquency proceeding is whether the respondent herein, who purports to have come to the aid of the victim of a crime, was justified in shooting an assailant in a moving subway car.
The respondent is before the court on charges of assault in the second degree, an act which if committed by an adult would be a violation of Penal Law § 120.05 (2) and criminal possession of a weapon in the third degree, a violation of Penal Law § 265.02.
The evidence adduced by the presentment agency, Corporation Counsel of the City of New York, at the fact-finding hearing consisted of the testimony of Detective John Morgan, Serious Crime Unit, New York City Transit Police, and a videotape statement made by the respondent plus hospital records of Kings County Hospital.
The respondent did not testify at the fact-finding hearing nor did the complainant Anthony who chose not to appear.
On February 6, 1987 the respondent and his four friends Kevin, Craig, Ralph and Monty were passengers aboard a subway train. Also in the same subway car was a second group of three boys including the complainant Anthony. As the train proceeded towards Brooklyn this second group of boys without any provocation started to pummel the respondent and his friends. The assailants grabbed Ralph and Monty and "popped” the jewelry chains which were around their necks.
Ralph managed to tell the respondent that he had a gun in a bag on the bench where they had been sitting. The respondent managed to reach into Ralph’s bag and pulled out the gun. As he took out the weapon from the bag the respondent shouted, "I’ve got a gun, I’m going to kill you!”. Whereupon two of the assailants released their victims and ran behind a sliding metal door which separated the subway cars. The complainant Anthony did not reach the sliding door before it closed and was left in the subway car by himself facing the respondent who was holding a gun.
As the respondent continued to hold the gun pointed at *212 Anthony, the situation in the subway car became increasingly chaotic.
As the train pulled into the subway station, Anthony started to run straight through to the door. The respondent thereupon pulled the trigger and fired, striking Anthony in his right arm as he ran. The train stopped and Anthony ran out of the subway car onto the station platform. The respondent then saw the other two assailants who had been behind the sliding metal door leap onto the station platform. Whereupon the respondent left the subway car and gave chase with the gun still in his hand. He pursued the group of fleeing youths on the platform, fired and by his own statement managed to strike one of the other two assailants in the leg twice. The respondent then returned to the subway car joining his friends.
JUSTIFICATION: A DISCUSSION OF THE APPLICABLE LAW
Essentially, the respondent via his video tape statement admitted that he shot Anthony, however, through his attorney he has interposed a defense of justification in that he shot the complainant during the course of a robbery. The respondent refers the court to section 35.15 of the Penal Law.
It is clear that under Penal Law § 35.15 (2) (b) a person is justified in using force to resist force in the course of a robbery attempt (People v Flores, 75 AD2d 649; People v Fuller, 108 AD2d 822; People v Davis, 74 AD2d 607; People v Huntley, 87 AD2d 488, affd on other grounds 59 NY2d 868).
This statute recognizes the defense of justification which permits the use of deadly physical force under certain circumstances.
The Court of Appeals has held that, "Penal Law § 35.15 permits the use of deadly physical force only where requirements as to triggering conditions and the necessity of a particular response are met (see, Robinson, Criminal Law Defenses § 121 [a], at 2). As to the triggering conditions, the statute requires that the actor 'reasonably believes’ that another person either is using or about to use deadly physical force or is committing or attempting to commit one of certain enumerated felonies, including robbery. As to the need for the use of deadly physical force as a response, the statute requires that the actor 'reasonably believes’ that such force is necessary to avert the perceived threat.” (People v Goetz, 68 NY2d 96, 106.)
*213 The key words in the statute are "reasonably believes”. A defense of justification under Penal Law § 35.15 contains both an objective and a subjective element. It must be determined by this court, as the finder of fact, whether the respondent was justified in reasonably believing that the complainant Anthony was committing or attempting to commit a robbery. Furthermore, it must also be determined if the respondent reasonably believed it was necessary to use deadly physical force to resist the perceived immediate use of physical force against himself or a third person in the course of a robbery. This is so because, "The statute further limits the permissible use of deadly physical force to that which a person reasonably believes necessary to protect himself or a third person. See N. Y. Penal Law § 35.15 (1) (McKinney 1975).” (Washington v Harris, 486 F Supp 1037, 1046 [SD NY 1980]; see also, People v McManus, 67 NY2d 541, 549.) Whether the respondent’s use of physical force was justified does not solely turn on his subjective beliefs but on his reasonable belief as well because a person may have a delusion or a fear and base his belief on hearsay or rumor so that the statutory language comports with an objective notion of reasonableness and requires that the actor’s/respondent’s belief be reasonable, and have a reasonable ground for such belief under the circumstances present at the time (People v Montanez, 118 AD2d 414).
An analysis of a defendant’s interposed defense of justification under Penal Law § 35.15 (2) (b) must take into consideration the defendant’s duty to retreat.* "It can hardly be said that the New York Legislature intended to relieve a victim of the enumerated felonies of the duty to retreat merely because the statute gave him the right to use deadly physical force to protect himself or a third person when that was reasonably believed to be necessary. If an individual knew he could retreat in complete safety to himself and others, he would not reasonably believe that deadly physical force was necessary to *214 defend himself or the third person.” (Washington v Harris, supra, 486 F Supp, at 1046.)
Similarly, supporting this construction, the Court of Appeals in the recent decision of People v Goetz (supra) has stated:
"Section 35.15 (2) (a) further provides, however, that even under these circumstances a person ordinarily must retreat 'if he knows that he can with complete safety as to himself and others avoid the necessity of [using deadly physical force] by retreating.’ * * *
"While the portion of section 35.15 (2) (b) pertaining to the use of deadly physical force to avert a felony such as robbery does not contain a separate 'retreat’ requirement, it is clear from reading subdivisions (1) and (2) of section 35.15 together, as the statute requires, that the general 'necessity’ requirement in subdivision (1) applies to all uses of force under section 35.15, including the use of deadly physical force under subdivision (2) (b).” (Supra, 68 NY2d, at 106, nn 4, 5; see, People v Fuller, supra, at 823.)
It is the burden of the presentment agency here to prove beyond a reasonable doubt the absence of justification (Penal Law § 25.00; see, People v McManus, supra, 67 NY2d, at 546-547; see also, People v Steele, 26 NY2d 526).
FINDINGS OF FACT AND CONCLUSIONS OF LAW
The court must now examine the facts to determine whether the respondent could have reasonably believed that his use of deadly physical force was necessary to avert the continued use of physical force upon him or his friends in the course of the robbery and whether it was reasonably necessary for him to use deadly physical force as a response at the moment he shot Anthony.
At the point where the respondent herein took out the gun from the bag which was on the bench next to Ralph, a robbery was occurring; the complainant, Anthony and the other two assailants were still aggressors in the robbery. When the respondent pulled out the gun, stood up and said "I’ve got a gun, I’m going to kill you!”, two of the assailants fled behind the sliding door which separated one subway car from another.
The respondent’s mere display of a gun accompanied by the respondent’s verbal statement of "I’ve got a gun, I’m going to kill you!” succeeded in warding off the assailants and their further use of physical force. Those that could fled behind a *215 sliding metal door. Anthony cowered "No, No!” and only moved forward because he had to pass the respondent in order to run through and out of the train. The court finds that, at that point, there was no longer any aggressive behavior in progress by Anthony and the other unarmed assailants. There is sufficient evidence for the court to find that the respondent had more than a few seconds to note that Anthony no longer represented a physical threat to him or his friends because of his own possession of a gun. Indeed, Anthony and the other initial assailants reacted as if the respondent with his gun posed a lethal threat to them. The robbery had been interrupted for a sufficient time for the respondent to have observed this changed circumstance and he should have reasonably realized that it was not necessary to shoot Anthony in order to avert any further physical force or aggression (People v Johnson, 125 AD2d 493, 494; People v Freer, 86 Misc 2d 280).
The complainant Anthony was shot while he was running away. Nothing could be more determinative of the respondent’s state of mind at that time than the fact that he actually ran after the other two initial assailants, pursued them after they left the subway car and shot one of them on the station platform. The court finds that at the time the respondent shot Anthony he did so in retaliation of the beating which was inflicted upon him and his friends and not in self-defense, nor to avert the continuation of the robbery nor to avert a threat of further physical force upon him and his friends. The respondent was not justified in reasonably believing that he had to shoot Anthony when he did in order to avert the perceived aggressive physical force used against him and his friends. In sum, the court finds that the respondent’s reaction to the situation was unreasonable and therefore excessive (People v Goetz, supra, at 116).
As the respondent’s sole defense was one of justification, a discussion of his duty to retreat is warranted here.
The facts herein established that the complainant and the other two assailants had ceased their aggressive confrontation after the respondent pulled out and displayed a gun. Furthermore, it was clearly established that the respondent knew that Anthony was not armed. While he was holding the gun on Anthony, the respondent had a sufficient opportunity to back away from Anthony and into the adjacent subway car behind him. Also, once the train pulled into the station, the respondent could have let Anthony leave the subway car or the respondent himself could have left. In other words, consider *216 ing the subjective circumstances which confronted the respondent, a reasonable view of the evidence and the facts would lead to the conclusion that the respondent must have known that he and his friends could have retreated in complete safety as to himself and others to avoid the necessity of using deadly physical force (Penal Law § 35.15 [1], [2]; People v Goetz, supra, at 106, nn 4, 5). Where it is alleged that the complainant was the initial aggressor, in order for the respondent to be justified in the use of deadly physical force upon Anthony, the respondent, who was not in his own home and who was not a peace officer, was required by statute to retreat (People v Pabon, 106 AD2d 587). Rather than fulfilling his statutory duty to retreat under Penal Law § 35.15 (2) (b), the respondent maintained his armed position in the subway car thereby unnecessarily creating an atmosphere of potential injury and panic to all the subway car passengers and resulting in his shooting of Anthony. (See, People v Thompson, 125 AD2d 511 [2d Dept 1986].)
In People v Dallara (108 AD2d 867), it was held that the defense of justification was not available to the defendant where he failed in his duty to retreat.
With regard to evidence of a physical injury sustained by Anthony, the Kings County Hospital records were admitted into evidence. The admission diagnosis on February 6, 1987 at 5:11 p.m. revealed a gunshot wound to the right arm. There is no doubt that Anthony suffered substantial pain as well as a substantial impairment of his physical condition. The court finds that the gunshot wound sustained by Anthony constitutes a "physical injury” by means of deadly weapon within the meaning of Penal Law § 120.05 (2) and § 10.00 (9) (People v Rojas, 61 NY2d 726).
An adverse finding cannot be made against the respondent on the strength of his own statements without additional corroboration. (CPL 60.50.) The statute has received a liberal interpretation. (See, People v Booden, 69 NY2d 185, 187.)
Here, Detective Morgan testified at the fact-finding hearing that on February 6, 1987 he saw Anthony at Kings County Hospital, a gunshot wound on his right arm. The medical records of Kings County Hospital sufficiently corroborated the gunshot wound sustained by Anthony on his right arm and the date and time at which it occurred. Consequently, there exists sufficient corroboration of the respondent’s voluntary video taped admissions for the court to make a finding that on *217 February 6, 1987 the respondent committed acts which would constitute a crime if he were an adult.
Accordingly, the court finds that the evidence and testimony adduced at the fact-finding hearing by the presentment agency was sufficient to disprove the respondent’s defense of justification beyond a reasonable doubt.
Furthermore, the court finds that the presentment agency has proven beyond a reasonable doubt that on February 6, 1987 the respondent had committed acts which if done by an adult would constitute assault in the second degree (Penal Law § 120.05 [2]) and criminal possession of a weapon in the third degree (Penal Law § 265.02).

 "A fair construction of the present Penal Law provision imposes a duty to retreat even upon victims of the enumerated felonies, if they can retreat with complete safety to themselves and others. Thus, a victim of an enumerated felony is not relieved of the duty to retreat merely because the statute gives him the right to use deadly force to protect himself or a third person when it was reasonably believed to be necessary. If an individual knows that he can retreat in complete safety to himself and others, the individual cannot, as a matter of law, reasonably believe that deadly force is necessary to defend himself or the third person.” (31 NY Jur 2d, Criminal Law, § 232, at 396.)