Roosevelt C. BENTLEY, Petitioner,

v.

Charles SCULLY, Superintendent, Greenhaven Correctional Facility, Respondent.

No. 92 Civ. 5050 (RWS).

United States District Court, S.D. New York.

May 11, 1994.

Roosevelt C. Bentley, petitioner pro se.

Robert T. Johnson, Dist. Atty., Bronx County, Bronx, NY, for respondent (Raphael J. Berman and Susan L. Valle, Asst. Dist. Attys., of counsel).

## OPINION

SWEET, District Judge.

Petitioner *pro se* Roosevelt C. Bentley ("Bentley" or "Petitioner") has made an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the grounds that he is held in custody in violation of the Constitution of the United States. For the reasons set forth below, the application is granted.

### The Parties

Bentley is presently incarcerated at the Green Haven Correctional Facility (the "Facility"), New York, pursuant to a judgment of conviction of the Supreme Court, Bronx County.

Respondent Charles Scully ("Scully" or "the State") is Superintendent of the Facility. Pursuant to an agreement between the Office of the District Attorney of Bronx County and Robert Abrams, Attorney General of the State of New York, the Bronx District Attorney (the "District Attorney") represents Scully.

### Facts and Prior Proceedings

The facts underlying Bentley's conviction are set forth in the opinion of the Appellate Division, First Department, which entertained Petitioner's appeal. *See People v. Bentley*, 112 A.D.2d 109, 492 N.Y.S.2d 381 (1st Dept.1985). As described in the Appellate Division opinion, the State charged that on November 15, 1979, Petitioner shot at a gypsy cab driver ("Bunyarko") who had been called to a Bronx apartment building. Bunyarko identified Petitioner as his assailant shortly thereafter and a police officer arrested Bentley soon afterwards. The next morning, the police recovered a series of items

including three handguns and almost four ounces of heroin from the roof of a garage below the window of the apartment in which Bentley had been arrested.

On January 9, 1980, a Bronx County grand jury returned an indictment against Bentley, charging him with second degree attempted murder; criminal possession of a weapon in the second and fourth degrees; reckless endangerment in the first degree; and criminal possession of a controlled substance in the second degree.

A bench warrant was issued for Bentley's arrest after Bentley, who at that time was out on bail in connection with the above charges, failed to appear in court. On April 8, 1980, Bentley was arrested in Florida and charged in the United States District Court for the Middle District of Florida with various federal firearm violations. He was convicted and sentenced to a term of five years' imprisonment on each of the four counts, with two of the terms to run concurrently with the remaining two terms.

On January 6, 1981, the Bronx County District Attorney filed with the Federal Correctional Institute in Memphis, Tennessee, a request pursuant to Article IV, Section (c) of the Interstate Agreement on Detainers, New York Criminal Procedure Law ("CPL") § 580.20 to have Bentley returned to New York to face the charges pending in Bronx County Supreme Court. On April 2, 1981, Bentley was returned to Bronx County.

On January 12, 1982 Bentley filed a motion to dismiss the Bronx indictment pursuant to CPL § 210.20, subd. 1(g) on the grounds that he was denied his right to a speedy trial in violation of CPL § 580.20. The motion was denied.

On February 17, 1982, after a jury trial, Bentley was found guilty of attempted murder in the second degree (New York Penal Law §§ 110, 125.25(1)) and criminal possession of a controlled substance in the second degree (New York Penal Law § 220.18(1)). At trial, the State successfully introduced evidence concerning the ballistics of the alleged assault weapon, the recovered drugs from the neighboring rooftop and testimony concerning the gypsy cab driver's identification of Bentley as his assailant.

On March 31, 1982, Bentley filed a motion to set aside the verdict pursuant to CPL §§ 330.30, 330.40 and 330.50 alleging: (1) that the evidence was insufficient to support the conviction; (2) that the indictment was defective; (3) that the prosecutor's summation was improper; (4) that the court's charge was improper; and (5) that the warrantless entry into the apartment violated the Fourth Amendment. On October 27, 1982, the court denied the motion.

On May 25, 1982, after conviction but before sentencing, Bentley filed his first federal habeas petition in United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 2254, claiming that he had been denied his right to a speedy trial in violation of the Sixth Amendment and CPL § 580.20. In a memorandum opinion and order dated July 2, 1984, the Honorable Mary Johnson Lowe dismissed Bentley's habeas petition on the grounds that he had failed to exhaust his state remedies.

On September 9, 1982, Bentley, with the assistance of trial counsel, formalized his January 1982 pretrial motion, which sought dismissal of the indictment on the grounds it violated his right to a speedy trial pursuant to CPL § 580.20. On October 29, 1982, Judge Daniel Sullivan of the Bronx County Supreme Court denied the CPL § 580.20 motion as well as the motions to set aside the verdict recounted above. Bentley on that date was sentenced to concurrent indeterminate terms of imprisonment of from twelve and one-half to twenty-five years on the attempted murder and possession of controlled substances counts.

On November 9, 1982, Bentley filed a timely notice of appeal requesting review of the denial of his motion to dismiss the indictment on speedy trial grounds and on April 26, 1983, the Appellate Division, First Department, granted Bentley leave to appeal the order of October 29, 1982, and consolidated it with Bentley's appeal from the judgment of conviction also rendered on October 29, 1982.

Bentley raised the following claims before the Appellate Division: (1) his statutory right

to speedy trial pursuant to CPL § 30.30 was denied; (2) the circumstantial evidence presented did not exclude as a reasonable hypothesis the possibility that someone other than Bentley constructively possessed the controlled substance; (3) the trial court's constructive possession charge violated CPL § 300.10(2) and denied Bentley his due process right to a fair trial; (4) the People failed to prove Bentley's guilt beyond a reasonable doubt; and (5) the prosecutor deprived Bentley of a fair trial by telling the jury that Bentley's guilt could be inferred from the fact that he was on the telephone with his lawyer while the police were seeking to enter the apartment.

The Appellate Division modified Bentley's judgment of conviction to reverse his conviction of Criminal Possession of a Controlled Substance, on the basis that the State failed to prove beyond a reasonable doubt that Petitioner constructively possessed the narcotics, and to otherwise affirm Bentley's judgment of conviction. On October 18, 1985, leave to appeal that decision to the Court of Appeals was denied.

On September 4, 1986, Bentley moved the Bronx County Supreme Court for a state writ of habeas corpus pursuant to Civil Practice Law and Rules ("CPLR") § 7003(a) alleging: (1) his return to New York was improper on the grounds that he was arrested by the agents of the State of New York without a warrant and proper papers; and (2) his subsequent detention pursuant to his state conviction was also improper, on the ground that the underlying indictment should have been dismissed. On November 12, 1986, the state habeas petition was dismissed.

In April 1986, Bentley, together with assigned counsel filed a second federal habeas petition in the Southern District of New York alleging: (1) Bentley was denied his Sixth Amendment right to speedy trial; and (2) he was denied due process by prosecutorial misconduct. On April 17, 1989, the Honorable Kenneth Conboy dismissed Bentley's petition without prejudice on the ground that Bentley failed to exhaust his state remedies with respect to his speedy trial claim.

On August 2, 1989, Bentley moved the Supreme Court, Dutchess County for state habeas relief based on the following grounds: (1) his return to New York violated CPL §§ 570.24, 570.26 in that he was detained and returned without proper papers and that he was further deprived of his right to be brought before a court while represented by counsel prior to his release to New York authorities; (2) he was denied equal protection through the trial court's refusal to allow Bentley to review the documents relating to his extradition to New York; (3) he was improperly sentenced as a second felony offender where the prosecutor failed to file a predicate felony statement and further deprived Bentley of an opportunity to controvert his prior felony conviction in violation of CPL § 400.21(3); (4) the court failed to obtain an updated presentence report prior to the imposition of sentence in violation of CPL § 390.20(1); (5) Bentley was deprived of his right to counsel at sentencing; and (6) the court and the Facility failed to furnish Bentley with a copy of his sentencing minutes in violation of CPL § 380.70. This petition was denied on December 12, 1989 by the Honorable Ralph A. Beisner.

On August 23, 1989, Bentley sought to vacate his judgment of conviction in Bronx County Supreme Court, pursuant to CPL § 440.10 on the following grounds: (1) he was deprived of his state statutory and Sixth Amendment right to speedy trial; (2) the People failed to prove his guilt beyond a reasonable doubt as there was only one eyewitness of questionable reliability; (3) the prosecutor denied Bentley a fair trial when he stated to the jury that Bentley's guilt could be inferred from the fact that he was on the phone with his lawyer discussing his Fourth Amendment rights at the time the police sought to enter his apartment; (4) he was tried in violation of the Interstate Agreement on Detainers; (5) he was deprived of a fair trial through the court's failure to give a proper instruction on "intent," to read back the victim's testimony as requested by the jury, and to separate the frivolous charges before being presented to the jury; (6) he received ineffective assistance of counsel through trial counsel's failure to file proper motions and present a plausible defense, as

well as his failure to object to either the prosecutor's misconduct or improper trial procedure; (7) his Fourth Amendment rights were violated when the police entered and remained in his apartment for over ten hours; and (8) he received ineffective assistance of appellate counsel through the attorney's failure to raise certain issues on appeal. This motion was denied, but the order itself was apparently lost from the court file.

On December 20, 1989, Bentley appealed the denial of this state habeas petition to the Appellate Division, Second Department. Assigned counsel filed a separate brief on behalf of Bentley.

On March 19, 1990, Bentley renewed his CPL § 440.10 motion to vacate the judgment of conviction raising the identical claims he had asserted in his motion papers dated August 23, 1989.

On June 22, 1990, the Honorable Daniel Sullivan denied both the August 23, 1990 and the March 19, 1990 CPL § 440.10 motions, and on January 3, 1991, the Appellate Division, First Department denied permission to appeal from that order. On February 8, 1991, the Court of Appeals dismissed Bentley's application to appeal the First Department Order on the grounds that it was not appealable.

On December 28, 1990, Bentley filed a third CPL § 440.10 motion in Bronx County Supreme Court for dismissal of the indictment on the following grounds: (1) the motion filed on his behalf seeking, *inter alia,* inspection of the grand jury minutes was never ruled on by the court and further that his attorney was ineffective for allowing the court to ignore the motion; (2) the prosecutor failed to notify Bentley or his attorney of the grand jury proceedings and therefore denied Bentley the right to testify on his own behalf; (3) the prosecutor withheld from the grand jury the fact that Bentley did not live in the apartment where the incident occurred as well as the fact that the gun allegedly used showed no signs of discharge; (4) the officers who testified before the grand jury withheld the fact that a travel bag containing heroin and a travel credit card, both of which were found in the apartment, had names other than Bentley's on them; (5) the instructions to the grand jury were inadequate, as the prosecutor provided only a single reading of the pertinent law; and (6) the proof adduced at the grand jury proceedings was insufficient since there was no direct evidence that Bentley had physical possession of the heroin at any time or that he had any motive to kill or that he even knew the complainant. The motion was denied on April 10, 1981.

Bentley filed his third federal habeas petition on March 19, 1991 alleging: (1) violation of Bentley's statutory and constitutional rights to speedy trial; (2) insufficiency of the evidence to support a verdict of guilty; (3) prosecutorial misconduct; (4) violation of his Fourth Amendment rights due to the police's search, allegedly without a warrant; (5) ineffective assistance of both trial and appellate counsel; (6) due process violations in the form of erroneous jury instructions. On September 10, 1991, in a memorandum opinion (the "1991 Opinion"), this Court denied Bentley's habeas petition for failure to exhaust his ineffective assistance of appellate counsel claims through a writ of error *coram nobis* in the state appellate courts.

On November 19, 1991, Bentley filed a notice of appeal of his denial of habeas relief to the U.S. Court of Appeals for the Second Circuit. On July 21, 1992, the Second Circuit denied Bentley's appeal in a one page order.

On November 25, 1991, the Appellate Division, Second Department affirmed the judgment of Judge Beisner dismissing Bentley's first state habeas petition. On December 20, 1991, Bentley appealed the order of the Appellate Division to the New York State Court of Appeals which was denied on February 20, 1992.

On December 3, 1991, in accordance with this Court's Opinion of September 10, 1991, Bentley brought a motion for a writ of error *coram nobis* in the Appellate Division, First Department, claiming he did not receive effective appellate counsel. On January 23, 1992, the First Department denied the petition, and subsequently, on March 23, 1992, the Court of Appeals dismissed his application for leave to appeal that order.

On July 7, 1992—two weeks before the Second Circuit denied his appeal of the third federal habeas petition—Bentley filed his fourth federal habeas petition in the Southern District of New York, pursuant to 28 U.S.C. § 2241, raising the same claims raised in the Second Department in his appeal of his state habeas petition which challenged his extradition from Tennessee. On December 29, 1992, this fourth petition was summarily dismissed by the Honorable Thomas P. Griesa pursuant to Rule 4 of the Rules Governing Habeas Corpus on the grounds that there was no discernable basis for relief. Judge Griesa also ordered that no certificate of probable cause would issue because an appeal would be frivolous.

On April 9, 1992, Bentley submitted his fifth federal petition for habeas relief to the *Pro Se* Office of the Southern District of New York raising grounds substantially similar to his third federal petition. That petition was formally filed and initially dismissed on July 8, 1992, *sua sponte* by the Honorable Charles L. Brieant on the grounds that it essentially duplicated Petitioner's third habeas petition, dismissed by this court on September 10, 1991 for failure to exhaust.

On July 21, 1992, Bentley filed a Fed. R.Civ.P. Rule 59 motion seeking reconsideration of the order of dismissal. The Court granted the Bentley's motion on the grounds that at the time of the original July 8, 1992 order, Bentley's appeal was still pending before the Second Circuit (which subsequently dismissed the appeal by memo endorsement on July 21, 1992). The Court further held its prior order should be vacated upon reconsideration since Petitioner had duly returned to state court to request review of his claim of ineffective assistance of appellate counsel through a *coram nobis*, which was denied on January 23, 1992, and a certificate to appeal of which was further denied on March 23, 1992.

As of January 1994, no federal court has reviewed the merits of Bentley's claims.

On January 6, 1994, this Court issued a memorandum opinion, *see Bentley v. Scully*, 92 Civ. 5050, 1994 WL 4259, 1994 U.S.Dist. LEXIS 48 (S.D.N.Y. Jan. 6, 1994), which rejected the State's abuse of the writ argument, found that Bentley was at last properly before the Court and, accordingly, permitted the Respondent additional time to address the merits of Bentley's petition.

Respondent filed its memorandum addressing the merits of Bentley's claims on March 18, 1994 and this habeas petition was considered fully submitted at that time.

## Discussion

In his habeas petition, Bentley raises eight claims, which may be arranged into three general categories:

### Sixth Amendment—Speedy Trial Claims

(1) Bentley was deprived of his state statutory and Sixth amendment right to a speedy trial;

(2) the time limitations provided under the Interstate Agreement on Detainers (the "IAD") was violated;

### Fair Trial Claims

(3) the prosecution denied Bentley the right to a fair trial when he informed the jury that Bentley's guilt could be inferred from the fact that he was on the telephone discussing his Fourth Amendment rights at the moment the police sought entry into the apartment;

(4) the prosecution failed to prove Bentley's guilt of Attempted Murder in the Second Degree beyond a reasonable doubt because: (a) the ballistic evidence failed to link appellant with the shooting of the complainant; (b) the jury was never told that the complainant was compelled to testify at trial under a material witness order; (c) the complainant's identification of Petitioner at trial was unreliable as it was made in "highly suggestive circumstances;" and (d) there were inconsistencies between the complainant's trial and grand jury testimony;

(5) the Court deprived Bentley of a fair trial by failing: to give a proper instruction on intent, to read back the victim's testimony pursuant to the request of the jury, and to separate the frivolous charges before presentation to the jury;

*Ineffective Assistance of Counsel Claims*

(6) counsel failed to file proper motions, present plausible defense, and object to prosecutor's misconduct and improper trial procedure;

(7) counsel failed to file a suppression motion on grounds that Bentley's Fourth Amendment rights were violated when police entered and remained in the apartment for more than ten hours;

(8) appellate counsel failed to raise certain claims on appeal.

The first section of this Opinion will address Bentley's speedy trial claims, the second section will focus on his claims that he was denied a right to a fair trial; and the third section will address his concerns regarding the alleged ineffectiveness of his trial and appellate counsel.

### I. *Bentley was Afforded his Sixth Amendment Right to a Speedy Trial*

█ Petitioner claims that he was deprived of his Sixth Amendment guarantee to a speedy trial due to what he alleges to be a total of 284 days of delay chargeable to the prosecution in violation of the 180 days allowed pursuant to N.Y.Crim.Proc.Law § 30.-30, subd. 1(a) (McKinney's 1992).[1] Petitioner also raises a second "speedy trial" claim based on an alleged violation of the time limitations set forth in Article III of the Interstate Agreement on Detainers (the "IAD").

In *Barker v. Wingo,* the Supreme Court set forth four factors for courts to consider when discerning whether a criminal defendant has been denied his Sixth Amendment right to a timely trial: (1) the length of the delay; (2) the reason for the delay; (3) whether or not the defendant asserted his or right; and (4) prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). "No one of these factors, however, is 'either a necessary or sufficient condition to the finding of a

deprivation of the right,' and courts still must engage in a sensitive balancing process whereby the conduct of *both* the prosecution and the defendant are weighed." *Rayborn v. Scully,* 858 F.2d 84, 89 (2d Cir.1988), *cert. denied,* 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989).

Petitioner's speedy trial claim does not have merit for the reasons set forth in the sentencing transcript. (Sentencing Tr. at 15–26.) In the course of Petitioner's sentencing, Judge Sullivan carefully reviewed Bentley's speedy trial claim and computed that the prosecution's delay only consisted of 86 days out of the statutory limit of 180 days. (Sentencing Tr. at 26.) Judge Sullivan determined that the majority of the delay in bringing Bentley to trial was attributable to the Petitioner himself, or his counsel.

According to the transcript, the following is a chronology of the events surrounding the Petitioner's trial.

### *Chronology of Events Surrounding Petitioner's Trial:*

November 15, 1979 Petitioner arrested for shooting at Joseph Bunyarko (Trial Tr. at 12–13; Sentencing Tr. at 13)

November 19, 1979 Petitioner released on $25,000 bail (Respts.' Ex. 11A)

January 25, 1980 Petitioner arraigned on indictment; adjourned by consent (Sentencing Tr. at 13, 18; Respts. Ex. 4, ADJ 1–25–80, at 8)

February 14, 1980 Defense files motion; adjourned for answer (Sentencing Tr. at 18; Respts.' Ex. 4, ADJ 2–14–80, at 2)

March 7, 1980 Defense requests adjournment to prepare demand for discovery (Sentencing Tr. at 18; Respts.' Ex. 4, ADJ 3–7–80, at 2)

March 28, 1980 Adjourned by consent for conference (Sentencing Tr. at 18; Respts.' Ex. 4, ADJ 3–28–80, at 2–2a)

---

1. Bentley's speedy trial claim was alleged in his first habeas petition before the Honorable Mary Johnson Lowe, but dismissed as unexhausted since petitioner's direct appeal was not yet decided. He asserted the claim in his second federal habeas petition in 1986 which was again dismissed as unexhausted by the Honorable Ken-

neth Conboy. The speedy trial claim was exhausted when Bronx Supreme Court Judge Sullivan denied the state collateral motion to set aside the verdict, pursuant to CPL § 440.10. (Respts.' Ex. 36.) Leave to appeal was subsequently denied by the Appellate Division, First Department and the Court of Appeals. (Respts.' Ex. 38, 40.)

April 12, 1980 Petitioner arrested on federal charges in Florida (Respts.' Ex. 11; Def.'s Mem. at 2)

April 21, 1980 Petitioner fails to appear in court; bench warrant issued (Sentencing Tr. at 18; Respts.' Ex. 4, ADJ 4–21–80, at 2–4)

July 1980 Warrant lodged as detainer against Petitioner by People (Respts.' Ex. 11A at 10)

August 15, 1980 Petitioner sentenced on federal conviction (Respts.' Ex. 11A at 10)

August 18, 1980 People contact federal authorities; are advised to await Petitioner's transportation to federal prison (Respts.' Ex. 11A at 10)

September 18, 1980 People contact federal authorities; are advised Petitioner not received yet at federal prison (Respts.' Ex. 11A at 10)

October 1, 1980 People contact federal authorities; Petitioner not received yet at federal prison (Respts.' Ex. 11A at 11)

October 28, 1980 People contact federal authorities; advised that Petitioner had been received but warrant-detainer not in his file (Respts.' Ex. 11A at 11)

December 3, 1980 People contact federal authorities; informed that warrant received is uncertified (Respts.' Ex. 11A at 11)

December 17, 1980 People send certified warrant (Respts.' Ex. 11A at 11)

December 30, 1980 Petitioner executes request for final disposition pursuant to Agreement on Detainers, Article III, CPL § 580.20 (Respts.' Ex. 11A at 11)

January 6, 1981 People serve request for temporary custody pursuant to Agreement on Detainers, Article IV, CPL § 580.20 (Respts.' Ex. 11A at 11)

February 10, 1981 People contact federal authorities; advised Petitioner can be returned to Bronx County (Respts.' Ex. 11A at 12)

April 2, 1981 Petitioner returned to Bronx County; adjourned to obtain new defense counsel (Sentencing Tr. at 18; Respts.' Ex. 4, ADJ 4–2–81, at 2–4)

April 3, 1981 Defense requests adjournment to confer with previous defense counsel (Sentencing Tr. at 18; Respts.' Ex. 4, ADJ 4–3–81, at 2)

April 30, 1981 Defense requests adjournment for conference (Sentencing Tr. 18–19; Respts.' Ex. 4, ADJ 4–30–81, unnumbered)

May 21, 1981 Adjourned because defense misplaced its file; court concludes both sides ready for trial subject to obtaining duplicate file for defense (Sentencing Tr. at 19; Respts.' Ex. 4, ADJ 5–21–81, at 2)

June 15, 1981 Adjourned on consent; awaiting missing documents (Sentencing Tr. at 19; Respts.' Ex. 4, ADJ 6–15–81, at 2–3)

July 10, 1981 Adjourned on consent; missing documents (Sentencing Tr. at 20; Respts.' Ex. 4, ADJ 7–10–81, at 2)

August 25, 1981 People's adjournment; prosecutor on vacation (Sentencing Tr. at 20; Respts.' Ex. 4, ADJ 8–25–81, at 2–3)

September 8, 1981 Defense counsel fails to appear; People indicate readiness to try case directly after *Ramos* case (Sentencing Tr. at 20; Respts.' Ex. 4, ADJ 9–8–81, at 2)

September 21, 1981 Defense counsel fails to appear (Sentencing Tr. at 20; Respts.' Ex. 4, ADJ 9–21–81, at 2)

October 7, 1981 Defense counsel fails to appear (Sentencing Tr. at 20; Respts.' Ex. 4, ADJ 10–7–81, at 2)

October 22, 1981 Defense counsel fails to appear; both People and defense engaged in other trials (Sentencing Tr. at 20; Respts.' Ex. 4, ADJ 10–22–81, at 2–2a)

November 6, 1981 Defense counsel fails to appear; court sanctions defense counsel; both sides engaged (Sentencing Tr. at 20; Respts.' Ex. 4, ADJ 11–6–81, at 2)

November 12, 1981 Defense counsel fails to appear; court sanctions defense counsel; both sides engaged (Sentencing Tr. at 20; Respts.' Ex. 4, ADJ 11–12–81, at 2–3)

November 30, 1981 Defense counsel fails to appear; People ready; case referred to

trial part; defense memo of law concedes People's readiness (Sentencing Tr. at 20–21; Respts.' Ex. 4, ADJ 11–30–81; Respts.' Ex. 11 Def.'s Mem. at 6)

November 30, 1981 Both sides appear at trial part; adjourned by court due to court congestion (Respts.' Ex. 4, ADJ 11–30–81; Parness, J., at 2)

December 7, 1981 Adjourned by court due to congestion (Respts.' Ex. 4, ADJ 12–7–81, at 3–4)

December 14, 1981 Adjourned to another trial part (Respts.' Ex. 4, ADJ 12–14–81, at 4)

January 4, 1982 Adjourned by court (Respts.' Ex. 4, ADJ 1–4–82, at 2)

January 5, 1982 Prosecutor engaged; both sides absent (Respts.' Ex. 4, ADJ 1–5–82, at 2)

January 6, 1982 Both sides absent; Petitioner files *pro se* motion based on deprivation of speedy trial (Respts.' Ex. 4, ADJ 1–6–82, at 2–4)

January 29, 1982 Trial commences

February 16, 1982 Guilty verdict rendered (Trial Tr. at 419)

October 29, 1982 After delay to obtain minutes of various adjournments, motion based on deprivation of speedy trial denied; Petitioner sentenced (Sentencing Tr. at 21, 42–43)

A thorough review of the sentencing transcript supports Judge Sullivan's detailed analysis which utilized a formula beneficial to Bentley in conformance with the Supreme Court's holding in *United States v. Mauro,* 436 U.S. 340, 357, 98 S.Ct. 1834, 1845, 56 L.Ed.2d 329 (1978) (holding formula most beneficial to defendant ought to be used in computing speedy trial motions). (Sentencing Tr. at 15.)

Between January 25 and March 28, 1980, Bentley's counsel requested several adjournments for motions, discovery and a conference. The next delay occurred because, due to his arrest in Florida, the Petitioner failed to appear and a bench warrant was issued. Petitioner was then sentenced to federal charges on August 15, 1980 and the Bronx District Attorney's Office began extradition procedures whereupon the Petitioner was returned to New York on April 2, 1981. From that point onward, the majority of the adjournments were either on consent or upon the request of defense counsel. At one point, the defense counsel lost the defense file, resulting in an additional delay for its duplication. Subsequently defense counsel failed to appear on several more occasions, whereupon counsel was sanctioned by the trial court.

As much of the delay was the result of the Bentley's "fugitivity," and in the absence of a showing of prejudice that such a delay might have had upon his defense, it is evident that the trial court's determination that no speedy trial violation occurred, pursuant to N.Y.Crim.Proc.Law § 30.30 (McKinney's 1992), was appropriate in this case. *See Rayborn v. Scully,* 858 F.2d 84, 89 (2d Cir. 1988) (holding defendant's "lack of serious interest in a speedy prosecution of the charges against him, as shown by his fugitivity, together with the absence of a showing of prejudice to his defense militate against finding that he suffered a deprivation of his sixth amendment right."), *cert. denied,* 488 U.S. 1032, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989). Further, as it is evident that the length of the delay does not violate the 180 day rule, as set forth in N.Y.Crim.Proc.Law § 30.30 (McKinney's 1992), this Court need not engage in a full analysis of the four factor analysis as set forth by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ Petitioner's second speedy trial claim, the alleged violation of the IAD, is not properly before this Court. The Second Circuit, in *Reilly v. Warden,* 947 F.2d 43, 44 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1227, 117 L.Ed.2d 462 (1992), has determined that violations of the time limitations set forth in the Interstate Agreement on Detainers are not cognizable in habeas corpus proceeding commenced by state prisoners pursuant to 28 U.S.C. § 2254. *Cf. Edwards v. United States,* 564 F.2d 652, 653 (2d Cir.1977) (holding that IAD claim is not a cognizable claim under 28 U.S.C. § 2255). Accordingly, Petitioner's speedy trial claim under the IAD is denied.

For the reasons set forth above, Bentley's claim for habeas relief, on a theory that he was denied his right to a speedy trial is denied.

## II. Bentley's Fair Trial Claims

### A. The Prosecutor's Improper Summation

Bentley alleges that the prejudicial nature of the prosecutor's summation denied him the right to a fair trial. In his summation, the prosecutor made the following statements which intimated that Bentley's guilt could be inferred from the fact that he was on the telephone with his lawyer at the moment the police sought entry into the apartment:

And then he [Bentley] realized how stupid and he runs upstairs and that's when the thinking starts setting in. Remember the testimony Joseph [Bunyarko] said that one of them was on the phone to the lawyer about not searching the apartment. Very smart.

Did you notice that the gun, the nine [millimeter] had no powder residue, no discharge? He cleaned it. Very smart.... The other two guns are dirty. Yet this one particular gun is cleaned. That's another thing I thought counsel might hit on. How do you know this gun was fired? It was recovered fully loaded, therefore it couldn't have been fired? Surprised he didn't mention that. Roosevelt had a lot of nine millimeter ammunition. He reloaded the gun. So when it was found it was no evidence of discharge. There was no round of ammunition missing.

Very intelligent act and very deliberate; the same type of man is calling to a lawyer while the cops are knocking on the door.

(Trial Tr. at 356–57.)

The New York Appellate Division, reversed Bentley's drug possession conviction on the grounds that the "circumstantial evidence adduced at trial was insufficient to provide the requisite degree of proof that defendant had constructive possession of the drugs which were found the day after his arrest on the outdoor garage roof.... an area which he neither owned, controlled, nor over which he exercised any dominion." *People v. Bentley*, 112 A.D.2d 109, 111, 492 N.Y.S.2d 381, 383 (1st Dept.1985) ("*Bentley*"). However, the court affirmed Bentley's conviction for attempted murder in the second degree as the "evidence adduced ... seems to us very persuasive indeed." *Id.* 112 A.D.2d at 111, 492 N.Y.S.2d at 383.

Turning its attention to the question of Bentley's alleged telephone conversation with his lawyer while the police were waiting outside the apartment, the court noted:

this evidence had been inadvertently elicited by defense counsel during cross-examination, and that he did not ask the trial court to strike the testimony or give curative instructions to the jury. The reference to this testimony by the District Attorney in the summation was clearly improper, but we see no reason to suppose that if an appropriate application had been made to the trial court there would not have been an instruction given that would have fully addressed the problem that had been raised. Under all the circumstances, we are not persuaded that the trial assistant's unobjected-to passing comment, although clearly an improper one, requires reversal, in the interest of justice, of a conviction so compellingly supported by the evidence.

*Bentley*, 112 A.D.2d at 111, 492 N.Y.S.2d at 384.

In dissent, Justice Ellerin commented that the prosecutor's remarks, "urging the jury to infer consciousness of guilt by reason of the defendant's exercise of his fundamental right to consult a lawyer[,] were improper and deprived the defendant of a fair trial." *Bentley*, 112 A.D.2d at 112, 492 N.Y.S.2d at 384. Justice Ellerin, noted that although no contemporaneous objection had been raised, the defendant properly pursued the issue in a CPL § 330 motion, *see* N.Y.Crim.Proc.Law § 330 (McKinney's 1994), and that "in any event, this court may, and should, consider this fundamental issue in the interest of justice." *Id.* Further, in urging reversal of Bentley's conviction, Justice Ellerin characterized the prosecutor's remark which "impugn[ed] the defendant for exercising this right" to counsel as "highly improper" and

"seriously prejudicial." *Bentley,* 112 A.D.2d at 112, 492 N.Y.S.2d at 385.

The questions presented for habeas review, then, are twofold. First, whether this Court is now procedurally barred from reviewing the allegedly "prejudicial" summation at Bentley's trial, and second, whether the summation was in fact prejudicial on the merits.

### 1. *This Court is Not Procedurally Barred to Review Bentley's Summation Claim*

"If we do not maintain Justice, Justice will not maintain us."
—Francis Bacon, Speech for prosecutor, Overbury Murder Case November, 1615

"Justice . . . limps along, but it gets there all the same."
—Gabriel Garcia Marquez *In Evil Hour* (1968)

"[A] state prisoner's challenge to the trial court's resolution of dispositive federal issues is always fair game on federal habeas." *Wainwright v. Sykes,* 433 U.S. 72, 79, 97 S.Ct. 2497, 2502, 53 L.Ed.2d 594 (1977) (citing *Brown v. Allen,* 344 U.S. 443, 458, 73 S.Ct. 397, 407, 97 L.Ed. 469 (1953) which held that "state adjudication carries the weight that federal practice gives to the conclusion of a court of last resort of another jurisdiction on federal constitutional issues. It is not *res judicata.*"). However, in *Wainwright v. Sykes* and its progeny, the Supreme Court set forth a stricter "cause and actual prejudice" standard for a federal court's collateral review of a state court's determination upon an issue on the theory that the "well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts." *Wainwright v. Sykes,* 433 U.S. at 81, 97 S.Ct. at 2503. The Supreme Court further held that a procedural waiver under state law preventing review of a defendant's substantive claim in the state courts constitutes an independent state ground barring federal habeas corpus review. *Id.* at 87, 97 S.Ct. at 2506; *see also Engle v. Isaac,* 456 U.S. 107, 124–35, 102 S.Ct. 1558, 1570–76, 71 L.Ed.2d 783 (1982) (holding failure to comply with Ohio contemporaneous objection rule forfeit federal habeas review); *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (holding failure to raise equal protection claim at trial or on direct appeal procedurally bars habeas review).

In *Harris v. Reed,* the Supreme Court held that federal habeas review of a state court's denial of a federal claim is permitted "unless the last state court rendering a judgment in the case " 'clearly and expressly' " states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (citations omitted); *see also Edwards v. Jones,* 720 F.2d 751, 753–54 (2d Cir.1983) (holding procedural default rule bars habeas review); *Phillips v. Smith,* 717 F.2d 44, 49–50 (2d Cir.1983), *cert. denied,* 465 U.S. 1027, 104 S.Ct. 1287, 79 L.Ed.2d 689 (1984) (same). Two years later, in *Coleman v. Thompson,* the Supreme Court held that *Harris v. Reed,* does not apply to affirmances without opinion unless there is "good reason to question whether there is an independent and adequate state ground for the decision." *Coleman v. Thompson,* 501 U.S. 722, 739, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640 (1991).

The Second Circuit has adopted the procedural default approach as set forth in *Wainwright v. Sykes* and its progeny. *Compare Gonzalez v. Sullivan,* 934 F.2d 419, 421 (2d Cir.1991) (Cardamone, J., majority) (holding that pursuant to *Wainwright v. Sykes* a Petitioner "may not raise a claim upon which he has procedurally defaulted in the state courts unless he is able to show cause for the default and prejudice resulting therefrom") *with Id.* at 424 (Oakes, J., concurring) (commenting "What a marvelous Catch–22 the law of federal habeas corpus now is! You lose in state court because your counsel did not make a timely objection. Your federal habeas petition is barred because no 'objective factor external to the defense impeded [your] counsel's efforts to comply with the State's procedural rule," and you therefore cannot show 'cause' and 'prejudice' under *Wainwright v. Sykes.* And, since you have not raised the point that your trial counsel's default was incompetency, that issue cannot be considered by the federal court. But if it

is raised in a subsequent petition, it will be considered an abuse of the writ, because it was not raised previously.") (citations omitted).[2]

According to the State, Bentley is procedurally barred from seeking habeas review of his improper summation claim on the theory that the Appellate Division held that defense counsel's silence—in failing to move to strike the testimony in question and in failing to object to the prosecutor's later use of the testimony upon summation—was procedurally barred from review. (Respts.' Br. at 15.)

■ It is true that the majority in the Appellate Division "noted" that defense counsel did not move to strike or seek curative instruction. *Bentley*, 112 A.D.2d at 112, 492 N.Y.S.2d at 384. Further, the majority indicated that it did not believe that the trial judge would have refused to cure the defect upon an appropriate application. However, the majority did not state that defense counsel's failure to make a contemporaneous objection barred Bentley from seeking review of this conviction. Rather, the majority specifically ruled that although the prosecutor erred, Bentley's conviction was "so compellingly supported by the evidence[,]" that its affirmance was "in the interest of justice." *Id.* Accordingly, a state court has not ruled

that defense counsel's failure to make a contemporaneous objection procedurally bars Petitioner's appeal,[3] and therefore the Petitioner has not been procedurally barred from asserting this claim.

■ Additionally, it appears Petitioner has satisfied the requirement, as set forth by the Second Circuit in *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir.1982) (en banc), that the Petitioner must have informed the state court of both the factual and legal premises of the federal claim later asserted for federal habeas review. *See also Gonzalez v. Sullivan*, 934 F.2d 419, 422 (2d Cir.1991) (stating "[c]ourts have therefore consistently held that any constitutional claim must have been 'fairly presented to the state courts.' ") (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971)). In Bentley's brief before the Appellant Division, he specifically claimed that the prosecutor's improper summation violated his constitutional rights on a theory that "[i]t is fundamental that a defendant's exercise of a constitutional right may not be used against him at trial." (Def.–App.'s Br. at 43) (citing *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965)); *People v.*

2. Judge Oakes is not alone in his dismay with the recent downward spiral in habeas jurisprudence. Professor Liebman is also critical of the Supreme Court's current characterization of federal habeas review as an original civil action as opposed to federal appellate review.

This Article has tried to reveal the fallacy in this one, anomalous and seemingly minor, aspect of Justice O'Connor's habeas corpus jurisprudence. The fallacy appears not only from the "original civil action" theory's contradiction of everything the Court and especially Justice O'Connor recently have accomplished in habeas corpus cases. Even more vividly, the fallacy appears from the "original action" theory's contradiction of 204 years of congressional and judicial action in regard not only to habeas corpus but to all federal court review of federal questions. Since 1789, Congress has entitled federal and state prisoners incarcerated in violation of any fundamental legal (typically, any constitutional) principle to one meaningful federal court review as of right. The model for that review, and its preferred "mode" when available, has been direct review on the merits as of right in the Supreme Court on writ of error or appeal. When direct feder-

al appellate review has not been meaningfully available, however, habeas corpus has consistently filled the breach.

James S. Liebman, "Apocalypse Next Time?: The Anachronistic Attack on Habeas Corpus/Direct Review Parity," 92 Colum.L.Rev. 1997, 2096 (1992).

3. Issue was joined on the question of whether New York's contemporaneous objection rule, CPL § 470.05(2), barred appeal concerning the prosecutor's improper summation. (*See* Respts.' Ex. 17, Respts.' App.Br. 19–20 (arguing CPL § 470.05(2) barred appellate review); Respts.' Ex. 16, Def.–App.'s Br. 43–46 (arguing summation was reversible error and that issue was preserved for appellate review because petitioner had raised claim in his prior Article 330 motion.)); *see also Bentley*, 112 A.D.2d at 113, 492 N.Y.S.2d at 384 (Ellerin, J. dissenting) ("while defendant raised no contemporaneous objection to these comments, he did raise the issue in a CPL article 330 motion. In any event this court may, and should, consider this fundamental issue in the interest of justice (CPL 470.15(6)(a); *see People v. Christman*, 23 N.Y.2d 429 [297 N.Y.S.2d 134, 244 N.E.2d 703 (1969)]; *People v. Artis*, 67 A.D.2d 981 [413 N.Y.S.2d 438 (1979)].)").

*Von Werne,* 41 N.Y.2d 584, 588, 394 N.Y.S.2d 183, 362 N.E.2d 982 (1977).)

Therefore, the improper summation issue was presented to, and rejected by, the state appellate court. Hence this question is appropriately before this Court on federal habeas review.

### 2. *The Merits of Bentley's Improper Summation Claim*

[I]f you throw a skunk into the jury box, you can't instruct the jury not to smell it.
 *Dunn v. United States,* 307 F.2d 883, 886 (5th Cir.1962) (Gewin, J.)

Bentley claims that the prosecutor's improper summation had the following devastating affect at trial:

The "gist" of what the prosecutor told the jury was that the petitioner was on the phone with his lawyer "while the cops were knocking on the door" because he knew he was guilty. In the words used[,] he portrayed the petitioner as a slick criminal who fired the shot at Bunyarko, cleaned the gun, threw it out the window. All to cover up the crime. And, then called his lawyer to get advise [sic] as to how to prevent the police from entering the apartment. The prosecutor went beyond simply stating that the petitioner had counsel ... the prosecutor hurt the petitioner beyond any hope of rehabilitation and thus deprived him of a fair trial. In a word the prosecutor dropped a "bombshell." It was said at a stage of the trial when the petitioner was defenseless—without the opportunity to rebut the strong inference of guilt that the prosecutor maliciously shackled upon him ... the prosecutor laid out the only inference which he wanted the jury to draw upon—i.e. that the defendant was conscious of his guilt. And, this violated his right to a fair trial secured by the due process clause.... The petitioner could not at this stage of the trial take the stand himself or produce any witnesses who could rebut the prosecutor['s] fatal comments.

(Petr.'s Br. at 80–81.) The question presented, then, is whether the prosecutor's concededly improper remarks at summation constitute a harmless error.

The standard for reversal of a criminal conviction based upon improper prosecution comments is extremely high. To constitute a constitutional violation, the remarks must "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986); *Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir.1991); *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986). "Prosecutorial misconduct during summation is grounds·for reversal only when the remarks caused 'substantial prejudice' to the defendant. We must assess how prejudicial the prosecutor's conduct was, what measures, if any, the trial court used to cure the prejudice, and whether the conviction was certain absent the prejudicial conduct." *Gonzalez v. Sullivan,* 934 F.2d 419, 424 (2d Cir.1991) (citations omitted) ("*Gonzalez*"). Thus, it is up to this Court to determine whether the prosecutor's improper remarks in summation rise above the harmless error standard.

Several Second Circuit cases guide review of this question. In *Gonzalez,* the Second Circuit in finding that a prosecutor—who had made inflammatory references that the Appellate Division characterized as having an "overwhelming vengeful" tone, *id.* at 423, in appealing to the community's sense of fear—had "overstepped the bounds of fair prosecutorial summation." *Id.* at 424. However, reviewed in light of the entire record, the Second Circuit affirmed the denial of habeas relief since the trial court had taken proper "curative action" such as "sustaining an objection" by defense counsel and "instruct[ing] the jury that the summations were not evidence and that the jury was the sole judge of the facts." *Id.* at 424. In sum, the Court held, "[g]iven the [trial] court's corrective actions and the strength of the evidence against the Petitioner, the prosecutor's summation did not render the trial fundamentally unfair." *Id.* at 424.

In *Washington v. Harris,* 486 F.Supp. 1037 (S.D.N.Y.1980), *vacated, remanded on*

*other grounds,* 650 F.2d 447 (2d Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982), a case astonishingly similar to the Petitioner's, the prosecutor, in summation, made the following comments about the defendant's consultation with an attorney:

> Let's examine Bobby Washington's statement for a second: What time was the crime committed? Police Officer [sic] testified that he got the call at approximately 8:30.

> We suggest that the crime happened before that. What time was the statement taken? 1:45 P.M. Man had time to think about what happened. [sic]

> Here's a man who had time and did, in fact, consult with an attorney.

*Washington v. Harris,* 486 F.Supp. at 1042. Trial counsel objected to the comments on the grounds that the prosecutor was unable to controvert a statement he had offered in evidence during his direct case.

The Honorable John M. Cannella ruled that although the prosecutor's remarks were "clearly improper," in considering the totality of the evidence produced at trial, "[u]nder the circumstances, the error contained in the comment was harmless beyond a reasonable doubt." *Washington v. Harris,* 486 F.Supp.

at 1043. The Court based its determination on the fact that the objectionable remarks were "brief and superficial" and went to the credibility of the petitioner and not the substance of the case. *Id.* at 1043 (quoting *Haberstroh v. Montanye,* 493 F.2d 483 (2d Cir.1974)). Judge Cannella then determined that in light of the circumstances and the evidence presented at trial, the error in the prosecutor's summation did not suffice to grant the petitioner's prayer for habeas relief.

Upon review, the Second Circuit held that "while the prosecutor's statement was error, it was harmless beyond a reasonable doubt when considered in the totality of the circumstances." *Washington v. Harris,* 650 F.2d 447, 454 (2d Cir.1981). Accordingly, the Court "agree[d] with the conclusions of the district judge ... substantially for the reasons given in the his opinion." *Id.* at 454.

■ It appears, then, that the standard of review for improper prosecutorial remarks at summation in this Circuit requires a court to evaluate: (1) the "brevity" and "superficiality" of the comments; (2) the harm or prejudicial impact of the comments in light of the totality of the evidence presented at trial; and (3) the quality of the curative instructions, if any.[4] *See United States v. Mat-*

---

**4.** The New York courts have adopted a similar analysis by expanding the *People v. Von Werne,* 41 N.Y.2d 584, 588, 362 N.E.2d 982, 985, 394 N.Y.S.2d 183, 186 (1977) (holding defendant's exercise of his constitutional right not to incriminate himself may not be used against him by the prosecution), line of cases to find that the improper reference by a prosecutor to a defendant's exercise of his Sixth Amendment right to counsel prior to arrest constitutes reversible error.

For example, in *People v. Collins,* 140 A.D.2d 186, 528 N.Y.S.2d 41 (1st Dept.1988), the court reversed the position it had taken in *Bentley* to find that a defendant's response to prosecutor's cross-examination, and the prosecutor's later use of this testimony on summation concerning defendant's Sixth Amendment right to consultation with counsel prior to his arrest, was a reversible error, even though issue had not been properly preserved for appeal. 140 A.D.2d at 188–89, 528 N.Y.S.2d at 44; *see also People v. Robinson,* 191 A.D.2d 595, 596, 594 N.Y.S.2d 801, 803 (2d Dept.1993) (finding reversal required where "prosecutor deliberately elicited testimony concerning the defendant's postarrest silence, and despite the court's ruling, made a point of stress-

ing this testimony in summation. The tactic was clearly improper."); *People v. Carter,* 149 A.D.2d 83, 89–91, 545 N.Y.S.2d 125, 128–29 (1st Dept. 1989) (holding prosecutor's summation concerning defendant's timing in seeking the advice of counsel constitutes reversible error in case based on circumstantial evidence); *People v. Christman,* 23 N.Y.2d 429, 433, 244 N.E.2d 703, 704, 297 N.Y.S.2d 134, 136 (1969) (reversing conviction where prosecutor in summation remarked on defendants refusal to discuss their alibis with the police after arrest) (per curiam); *People v. Perez,* 90 A.D.2d 468, 469, 455 N.Y.S.2d 89, 90 (1st Dept.1982) (holding prosecutor's references to defendant's consultation with counsel, among other prosecutorial improprieties, constituted reversible error.).

Consistent with the Second Circuit's third prong of the improper summation analysis, some New York Courts have held that if a finding of reversible error in such circumstances may be avoided provided the trial court has given prompt, curative instructions and appropriate charges to the jury. *See, e.g., People v. Bailey,* 159 A.D.2d 628, 553 N.Y.S.2d 1002 (2d Dept. 1990); *People v. Thomas,* 147 A.D.2d 725, 538 N.Y.S.2d 330 (2d Dept.Div.1989).

*thews,* 20 F.3d 538, 551 (2d Cir.1994) (holding that a prosecutor's reference to testimony concerning defendant's invocation of right to counsel and refusal to take a lie detector in summation, did not urge the jury to infer the defendant's guilt; although remarks were improper, they constitute a harmless error that did not substantially prejudice the defendant, given their brevity and the court's curative instructions).

■ Applying the three prong analysis, the first prong, concerning the brevity of the comment, is not a significant issue here as only two of the 23 pages—nearly ten percent—of summation concerned the improper statements. It appears, then, that the questionable aspects of the summation were relatively brief with respect to the overall summation.

The next prong of the Second Circuit's analysis of improper prosecutorial summation requires the court to weigh the prejudicial impact of the comments in question in light of the totality of the evidence. The evidence put forth at trial included: (1) Bunyarko's identification of the defendant as the man who shot at his cab shortly after the incident and again in court; (2) the recovery of a spent, nine millimeter shell casing on the sidewalk where the incident occurred; and (3) the recovery of an operable, nine millimeter gun which matched the recovered shell casing, on top of a pile of guns and narcotics on a roof below the window of the apartment in which the Petitioner was arrested.

The evidence at trial, in particular the eyewitness identification, appears to satisfy the requirement that *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," as set forth in *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) (emphasis in original) (*"Jackson"*). However, as Chief Judge Newman notes, prior to this oft-repeated standard, the *Jackson* Court first stated that " '[a]fter [*In re*] *Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ] the critical inquiry ... must be ... whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.' " *See* Jon O. Newman, "Beyond A Reasonable

Doubt," James Madison Lecture at New York University Law School, Nov. 9, 1993, at 13 (forthcoming in —— N.Y.U. L.Rev. —— (1994)) ("Newman Speech") (citing *Jackson,* 443 U.S. at 318, 99 S.Ct. at 2788). Judge Newman persuasively argues that:

the two [*Jackson*] sentences convey quite different thoughts. The first sentence, correctly in my view, applies the traditional test for determining sufficiency of the evidence—namely, whether the law's ubiquitous reasonable person, in this case, a reasonable jury, could find the matter proven by the requisite degree of persuasion, in this case, beyond a reasonable doubt. The second, sentence, however, shifts the emphasis away from the law's construct of the reasonable jury and conjures up the image of a vast random distribution of reasonable juries, with the risk of creating the misleading impression that just one of them need be persuaded beyond a reasonable doubt.

Newman Speech at 14.

Continuing, Judge Newman proposes that "[i]f appellate courts were taking seriously the legal standard of proof that persuades beyond a reasonable doubt, we should expect to see at least a modest number of cases in which a reviewing court says, 'The evidence perhaps suffices to persuade a reasonable trier by the "preponderance" standard but it does not suffice to persuade beyond a reasonable doubt.' " Newman Speech at 18.

Such appears to be quandary posed by the present habeas petition. Although an eyewitness—Bunyarko—identified Bentley almost immediately after the shooting, the eyewitness, in the words of Judge Newman, "did not previously know the accused and had only a brief opportunity to observe him." Newman Speech at 33–34. Further, the remaining evidence is not conclusive, as no evidence was presented at trial to link the alleged assault weapon, recovered on a neighboring rooftop, with Bentley or the apartment in which he was arrested. In fact, the Appellate Division, somewhat inconsistently, reversed Bentley's original drug conviction on the basis that the circumstantial evidence of concerning the drugs, which were located with the guns, "was insufficient to

provide the requisite degree of proof that defendant had constructive possession of the drugs which were found the day after his arrest on the outdoor garage roof ... an area which he neither owned, controlled, nor over which he exercised any dominion." *Bentley*, 112 A.D.2d 109, 111, 492 N.Y.S.2d 381, 383 (1st Dept.1985).

The Appellate Division made the seemingly paradoxical finding that Bentley had control over the guns, but not the drugs with which they lay, in upholding Bentley's attempted murder conviction while reversing the drug conviction, presumably based on the forensic evidence relating to the gun and the fact that there is no weapon "possession" element for attempted murder. Certainly, there is substantial circumstantial evidence in this case, the evidence concerning the ballistics of the gun and the eyewitness, but the question remains whether the "all the circumstances," would have been as strong to the jury in the absence of the prosecutor's "clearly improper" summation. *People v. Bentley*, 112 A.D.2d 109, 112, 492 N.Y.S.2d 381, 384.

It is the third and final prong of the Second Circuit's analysis which is most difficult to apply in the context of this case. It is evident that defense counsel did not lodge a contemporaneous objection concerning the Petitioner's consultation with counsel prior to his arrest and that the trial court did not give a limiting instruction at the time the testimony was elicited, at summation, or in the jury charge. In addition, the Appellate Division's characterization, that the prosecutor's comments regarding Petitioner's consultation with counsel was improper, is undisputed.

Finally, it must be noted that the New York courts appear to have adopted a stricter standard for evaluating improper prosecutorial summations than the one which was applied to Bentley. *See supra* note 4, at 600–601. As a result, what were previously Justice Ellerin's views in dissent has now

evolved into the views of the majority in a nearly identical Appellate Division case. In *People v. Collins*, 140 A.D.2d 186, 528 N.Y.S.2d 41 (1st Dept.1988), the court held:

> Thus, the decision to consult with an attorney may be attributable to a variety of reasons ... [i]t is, therefore, a fact having minimal probative worth. Moreover, that worth is far outweighed by the risk of prejudice to the defendant and the chilling effect on the exercise of this fundamental right if the State were permitted to attack the defendant's credibility by pointing out that he sought legal advice prior to his arrest.

140 A.D.2d at 189, 528 N.Y.S.2d at 44 (reversing conviction on the grounds that defendant's response to prosecutor's cross-examination, and the prosecutor's later use of this testimony, which concerned defendant's Sixth Amendment right to consultation with counsel prior to his arrest, on summation, was a reversible error, even though issue had not been properly preserved for appeal).

 A defendant's right to seek the advice of counsel is a fundamental right which must not be commented upon by a prosecutor.[5] The right to counsel "is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty.... The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' " *Johnson v. Zerbst*, 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938) (citing *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)). With this "admonition" in mind, it is evident that the absence of cure to the prosecutor's improper summation weighs heavily in favor of granting the Great Writ in this case.

The issue, then, is whether the paucity of cure had the effect of leaving such a taint of prejudice as to infect the jury's decision making process in determining the Petitioner was

---

5. The Sixth Amendment reads in full: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

guilty beyond a "reasonable doubt." Here, the prosecutor's improper and uncorrected comments had the devastating effect of urging the jury to impute consciousness of guilt by the fact that the Petitioner exercised his fundamental right to consult a lawyer. To allow a jury to question the Defendant's innocence because he sought to employ a fundamental right is not a harmless error under the circumstances of this trial and requires that this Court must grant the relief requested.

Accordingly, Bentley's petition for federal habeas relief, pursuant to 28 U.S.C. § 2254, is appropriate as the prosecutor's statements at trial improperly impinged upon his Sixth Amendment right to consult counsel.

### A. *Proof at Trial*

Bentley next claims that the prosecution failed to prove Bentley's guilt of Attempted Murder in the Second Degree beyond a reasonable doubt because: (a) the ballistic evidence failed to link appellant with the shooting of the complainant; (b) the jury was never told that the complainant was compelled to testify at trial under a material witness order; (c) the complainant's identification of petitioner at trial was unreliable as it was made in "highly suggestive circumstances;" and (d) there were inconsistencies between the complainant's trial and grand jury testimony.

■ Petitioner's claims, for the most part, are procedurally forfeited for habeas review. Of the four claims, Bentley has only presented his third claim, that the complainant's identification at trial was unduly "suggestive," on direct appeal. The other three of the four factual grounds asserted above were only presented in state court for the first time in his two post-judgment motions to vacate the conviction pursuant to CPL § 440.10. As these three claims are matters of record which should have been raised in Bentley's direct appeal under New York law, they cannot be reviewed at this time. *See* N.Y.Crim.Proc.Law § 440.10(2)(c) (McKinney's 1994). As a result, petitioner employed an incorrect procedure to litigate these grounds and they remain unexhausted and may not be reviewed by this Court. *See*

*Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

■ The facts concerning Bentley's suggestive identification claim were presented in his direct appeal to the First Department, and again in his unsuccessful effort to acquire appellate review of that decision. (*See* Respts.' Ex. 16, 19.) This claim has been procedurally exhausted. *See Daye v. Attorney Gen. of New York,* 696 F.2d 186, 190 n. 3 (2d Cir.1982). Accordingly, Bentley's reasonable doubt claim is now based upon factual allegations which are both properly exhausted in state court and other factual allegations which remain unexhausted. Pursuant to the Supreme Court's holding in *Rose v. Lundy,* 455 U.S. 509, 520–21, 102 S.Ct. 1198, 1204–05, 71 L.Ed.2d 379 (1982), Bentley should now either return to state court to exhaust his unexhausted claims or delete them from his petition. However, under New York state law, Bentley has no recourse in state court and the claims must be considered procedurally forfeited.

Bentley has already completed his direct appeal in state court and another motion to vacate the judgment of conviction pursuant to CPL § 440.10 would be denied by the state court. *See* N.Y.Crim.Proc.Law § 440.-10(2)(c) (McKinney's 1994). Additionally, as Bentley could have raised his claims based on the factual record in the First Department on direct appeal, he may neither obtain a state writ of habeas corpus, *see People ex rel. Grady v. Le Fevre,* 152 A.D.2d 850, 544 N.Y.S.2d 61 (3d Dept.1989), *appeal denied,* 75 N.Y.2d 702, 552 N.Y.S.2d 108, 551 N.E.2d 601 (1990), nor obtain a writ of error *coram nobis, see People v. Caminito,* 3 N.Y.2d 596, 601, 170 N.Y.S.2d 799, 148 N.E.2d 139 (1958) (failing to pursue the "usual" and "accepted" appellate procedure to gain review of conviction does not warrant *coram nobis* ).

■ Absent a showing of cause and prejudice, Bentley has forfeited federal review of these claims. *See Teague v. Lane,* 489 U.S. 288, 297–99, 109 S.Ct. 1060, 1068–69, 103 L.Ed.2d 334 (1989); *Engle v. Isaac,* 456 U.S. 107, 124–35, 102 S.Ct. 1558, 1570–76, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 77–91, 97 S.Ct. 2497, 2501–02, 53

L.Ed.2d 594 (1977). As petitioner has failed to establish "cause," in other words why he did not raise these claims at the appropriate time and in the appropriate forum, it is unnecessary to make an inquiry into the question of "prejudice," *see Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982), and federal habeas review of Bentley's attack's on the sufficiency of the prosecution's evidence is barred.

## C. *The Jury Instruction Was Proper*

■ In Bentley's fifth claim for habeas relief, he contends that the trial court deprived him of a fair trial by failing to give proper instructions on intent, to read back the victim's testimony pursuant to the request of the jury, and to separate the frivolous charges before presentation to the jury.

This claim is forfeited as it is procedurally barred by the state court's rejection of these claims. Petitioner raised this claim in two identical CPL § 440.10 motions to set aside the judgment of conviction in August 1989 and March 1990. The State opposed these motions without addressing their merits. In its opposition the State argued that Bentley's claims are procedurally barred under CPL § 440.10(2)(c) which states that the court *must* deny a motion to vacate a judgment when a claim involving matters of the trial record which should have been raised on direct appeal, but were not, "owing to the defendant's unjustifiable failure to ... raise such ground or issue upon an appeal actually perfected by him[.]" N.Y.Crim.Proc.Law § 440.10(2)(c) (McKinney's 1994). Both of Bentley's CPL § 440 motions were summarily denied at the state trial court level without opinion and leave to appeal those decisions were denied by the First Department, again without opinion.

In *Harris v. Reed* the Supreme Court established a "presumption that when a federal claim is denied without explicit reliance on state grounds, the merits of the federal claim are the basis for the judgment." *Wedra v. Lefevre,* 988 F.2d 334, 338 (2d Cir.1993) (discussing the "clearly and expressly" standard of federal habeas review of state procedural bar cases as set forth in *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (*"Harris"*)). However, several years later, the *Harris* presumption was circumscribed by the Supreme Court in *Coleman v. Thompson,* 501 U.S. 722, 735–40, 111 S.Ct. 2546, 2557–59, 115 L.Ed.2d 640 (1991) (*"Coleman"*). *Coleman* held that the *Harris* presumption should only be applied "when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision." *Coleman,* 501 U.S. at 739, 111 S.Ct. at 2559; *see also Wedra v. Lefevre,* 988 F.2d 334, 338–39 (2d Cir.1993) (discussing implications of *Coleman* on *Harris* presumption).

In *Quirama v. Michele,* the Second Circuit affirmed a District Court's refusal, pursuant to the Supreme Court's ruling in *Coleman,* to review state court affirmances without opinion on the theory that it is "reasonable to presume that silence in the face of arguments asserting a procedural bar indicated that the affirmance was on state grounds." *Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir.1993) (*"Quirama"*) (citing and "reaffirm[ing]" *Martinez v. Harris,* 675 F.2d 51, 54–55 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982) (*"Martinez"*)).[6] As in *Quirama,* Bentley has shown "no 'good reason' to believe that the

---

6. As the Second Circuit explains in *Quirama,* it had originally adopted a presumption of state procedural bar when reviewing New York state court orders without opinions in *Martinez v. Harris,* 675 F.2d 51 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982). This presumption was discarded in *Asherman v. Meachum,* 932 F.2d 137, 143–44 (2d Cir.1991) (holding *Harris v. Reed* replaced *Martinez* ), in light of the Supreme Court's opinion in *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see also Peterson v. Scully,* 896 F.2d 661,

664 (2d Cir.) (holding that *"Harris* changes the law in this Circuit"), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990)). The Second Circuit reverted to its original *Martinez* presumption last year in *Quirama,* 983 F.2d 12, 14 (2d Cir.1993) ("However, in *Coleman,* the Supreme Court stated that *Harris* did not apply to affirmances without opinion unless there is 'good reason to question whether there is independent an adequate state ground for the decision.' ").

Appellate Division's silence reflects a decision on the merits." *Id.* (citing *Coleman,* 501 U.S. at 739, 111 S.Ct. at 2559).

Bentley is therefore barred from raising his claims for habeas review as he has not shown cause for his failure to seek direct review of his jury instructions and the trial court's failure to read back the victim's testimony to the jury.

### III. *Bentley's Ineffectiveness of Counsel Claims May Not Prevail*

#### A. *Bentley's Trial Counsel*

■ Bentley claims that he was denied effective assistance of trial counsel for the following reasons: (1) counsel failed to move to dismiss the indictment based on certain improprieties and deficiencies in the Grand Jury proceedings; (2) counsel failed to file a motion to suppress evidence alleged obtained in violation of his Fourth Amendment rights; (3) counsel "allowed the court to ignore" a pre-trial "Omnibus motion for inspection of the Grand Jury minutes, discovery, bill of particulars and suppression hearing"; (4) counsel failed to present a plausible defense theory; and (5) counsel failed to object to prosecutor's improper remarks on summation.

Bentley's ineffective assistance of counsel claims, like his jury instruction claim discussed above, are procedurally barred from federal habeas review. His first claim, that his counsel purportedly failed to move to dismiss his indictment based on improprieties in the Grand Jury, was raised in Bentley's January 1991 post-judgment motion. (*See* Respts.' Ex. 41.) Bentley's remaining four claims were raised in his identical post-judgment motions of August 1989 and March 1990. (*See* Respts.' Ex. 32, 34.)

The State opposed all five claims, without addressing their merits, on the same procedural bar theory. That is, that all five grounds are matters of record which should have been raised on petitioner's direct appeal and his failure to do so was unjustified within the meaning of CPL § 440.10(2)(c). (*See* Respts. Ex. 33, 35, 42.) Bentley's January 1991 post-judgment motion was denied without opinion by the Honorable John N. Byrne,

New York Supreme Court. (*See* Respts.' Ex. 43.) Bentley's other post-judgment motions were also summarily denied without opinion and leave to appeal those decisions was denied by the First Department as well as the New York State Court of Appeals. (*See* Respts.' Ex. 36, 38, 40.)

As noted above, in light of *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Second Circuit has discouraged federal habeas review of state court affirmances without opinion on the theory that it is "reasonable to presume that silence in the face of arguments asserting a procedural bar indicated that the affirmance was on state procedural grounds." *Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir.1993) (citing *Martinez v. Harris,* 675 F.2d 51, 54–55 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982)). Here, Bentley's ineffective assistance of counsel claims should be barred from consideration since they have been denied by the state courts on presumably state procedural grounds.

#### B. *Petitioner's Appellate Counsel*

■ Bentley claims his appellate counsel was ineffective for failing to raise the following claims on appeal: (1) ineffective assistance of trial counsel; (2) violations of the time limitations contained in the Interstate Agreement on Detainers; (3) claims raised by petitioner in his CPL § 330.30 motion, in which he alleged Fourth Amendment violations; and (4) improprieties in the Grand Jury proceedings which rendered the indictment ineffective.

■ The Supreme Court has held that an appellate attorney does not have a constitutional obligation to raise every issue on appeal. *See Jones v. Barnes,* 463 U.S. 745, 750–54, 103 S.Ct. 3308, 3312–14, 77 L.Ed.2d 987 (1983). In fact, the purpose of appellate counsel is to "winnow[ ] out weaker arguments on appeal and focus[ ] on one central issue if possible." *Id.* at 751, 103 S.Ct. at 3312. In this case, appellate counsel filed an extensive appellate brief of approximately 50 pages in which he appropriately raised five

issues for appellate review. As a result of this effort, appellate counsel achieved reversal of the Bentley's drug possession conviction. Counsel subsequently sought leave to the Court of Appeals seeking reversal of the remainder of the judgment which had otherwise been affirmed by the Appellate Division in *Bentley,* 112 A.D.2d 109, 492 N.Y.S.2d 381 (1st Dept.1985).

The Supreme Court has stated that:

For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders.* Nothing in the Constitution or our interpretation of that document requires such a standard.

*Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983) (referring to *Anders v. California* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)).

Accordingly, upon a review of the record, and in light of the apparent vigorousness of appellate counsel's representation, Bentley's claim concerning the alleged ineffectiveness of his appellate counsel is denied.

### Conclusion

For the reasons set forth above, Bentley's petition for a writ of habeas corpus is granted and the conviction set aside. Bentley is to be released unless the State promptly affords him a new trial.

It is so ordered.